**Jean Marie YUNKER, as trustee for the heirs and next-of-kin of Kathleen M. Nesser, Appellant,**

v.

**HONEYWELL, INC., a Delaware Corporation, Respondent.**

No. C5–92–1649.

Court of Appeals of Minnesota.

March 2, 1993.

Review Denied April 20, 1993.

Mark Hallberg, Mackenzie & Hallberg, P.A., Minneapolis, for appellant.

William J. Egan, Patrick J. Sauter, Eric J. Magnuson, Rider, Bennett, Egan & Arundel, 2000 Lincoln Centre, Minneapolis, for respondent.

Considered and decided by KLAPHAKE, P.J., and LANSING and CRIPPEN, JJ.

## OPINION

LANSING, Judge.

On motion for summary judgment, the district court held, as a matter of law, that an employer breached no ascertainable duty of care in hiring, retaining, and supervising an employee who shot and killed a coemployee off the premises. The employee had been rehired following imprisonment for the strangulation death of anoth-

er coemployee. We affirm the district court's ruling as it applies to the theories of negligent hiring and supervision, but reverse the summary judgment as it applies to negligent retention and remand that part of the action to the district court.

## FACTS

Honeywell employed Randy Landin from 1977 to 1979 and from 1984 to 1988. From 1979 to 1984 Landin was imprisoned for the strangulation death of Nancy Miller, a Honeywell coemployee. On his release from prison, Landin reapplied at Honeywell. Honeywell rehired Landin as a custodian in Honeywell's General Offices facility in South Minneapolis in August 1984. Because of workplace confrontations Landin was twice transferred, first to the Golden Valley facility in August 1986, and then to the St. Louis Park facility in August 1987.

Kathleen Nesser was assigned to Landin's maintenance crew in April 1988. Landin and Nesser became friends and spent time together away from work. When Landin expressed a romantic interest, Nesser stopped spending time with Landin. Landin began to harass and threaten Nesser both at work and at home. At the end of June, Landin's behavior prompted Nesser to seek help from her supervisor and to request a transfer out of the St. Louis Park facility.

On July 1, 1988, Nesser found a death threat scratched on her locker door. Landin did not come to work on or after July 1, and Honeywell accepted his formal resignation on July 11, 1988. On July 19, approximately six hours after her Honeywell shift ended, Landin killed Nesser in her driveway with a close-range shotgun blast. Landin was convicted of first degree murder and sentenced to life imprisonment.

Jean Yunker, as trustee for the heirs and next-of-kin of Kathleen Nesser, brought this wrongful death action based on theories of negligent hiring, retention, and supervision of a dangerous employee. Honeywell moved for summary judgment and, for purposes of the motion, stipulated that it failed to exercise reasonable care in the hiring and supervision of Landin. The trial court concluded that Honeywell owed no legal duty to Nesser and granted summary judgment for Honeywell.

## ISSUE

Did Honeywell have a duty to Kathleen Nesser to exercise reasonable care in hiring, retaining, or supervising Randy Landin?

## ANALYSIS

 The existence of a legal duty is generally an issue for the court to decide as a matter of law. *Larson v. Larson,* 373 N.W.2d 287, 289 (Minn.1985). Whether a duty exists depends on the relationship among parties and the foreseeability of harm to others. *Erickson v. Curtis Inv. Co.,* 447 N.W.2d 165, 168–69 (Minn.1989). Public policy is a major consideration in identifying a legal duty. *Id.* at 169.

In determining that Honeywell did not have a legal duty to Kathleen Nesser arising from its employment of Randy Landin, the district court analyzed Honeywell's duty as limited by its ability to control and protect its employees while they are involved in the employer's business or at the employer's place of business. Additionally, the court concluded that Honeywell could not have reasonably foreseen Landin's killing Nesser.[1]

---

**1.** The parties and the district court also analyzed the issue of liability under a general theory of a duty to control third persons from committing wrongful acts. Although the "duty to control" implicates similar principles of negligence, it is not usually applied to an employment relationship, and none of the cases cited by the parties analyze a duty to control as an element of negligent hiring or retention. *See Erickson,* 447 N.W.2d 165 (whether owner of a parking ramp owed a duty to customers to use reasonable care to deter criminal activity on its premises); *Lundgren v. Fultz,* 354 N.W.2d 25 (Minn.1984) (whether a psychiatrist was negligent in allowing a patient to gain access to a handgun); *Silberstein v. Cordie,* 474 N.W.2d 850 (Minn.App.1991) (whether parents had a duty to control mentally ill child who obtained a shotgun left in an unlocked closet). *Cf. Wood v. Astleford,* 412 N.W.2d 753 (Minn.App.1987) (rejecting a duty to warn when spouse and employer had no notice of aberrant behavior or specif-

■ Incorporating a "scope of employment" limitation into an employer's duty borrows from the doctrine of respondeat superior. *See Marston v. Minneapolis Clinic of Psychiatry & Neurology, Ltd.*, 329 N.W.2d 306 (Minn.1982). However, of the three theories advanced for recovery, only negligent supervision derives from the respondeat superior doctrine, which relies on connection to the employer's premises or chattels. *See Semrad v. Edina Realty, Inc.*, 493 N.W.2d 528, 534 (Minn.1992). We agree that negligent supervision is not a viable theory of recovery because Landin was neither on Honeywell's premises nor using Honeywell's chattels when he shot Nesser.

■ The remaining theories, negligent hiring and negligent retention, are based on direct, not vicarious, liability. *See Ponticas v. K.M.S. Inv.*, 331 N.W.2d 907, 911 n. 5 (Minn.1983). Negligent hiring and negligent retention do not rely on the scope of employment but address risks created by exposing members of the public to a potentially dangerous individual. *Di Cosala v. Kay*, 91 N.J. 159, 450 A.2d 508, 515 (1982). These theories of recovery impose liability for an employee's intentional tort, an action almost invariably outside the scope of employment, when the employer knew or should have known that the employee was violent or aggressive and might engage in injurious conduct. *Id.* 450 A.2d at 515; *see also Connes v. Molalla Transp. Sys.*, 831 P.2d 1316, 1320–21 (Colo.1992); *Plains Resources, Inc. v. Gable*, 235 Kan. 580, 682 P.2d 653, 662 (1984).

I

■ Minnesota first explicitly recognized a cause of action based on negligent hiring in *Ponticas* in 1983. *Ponticas* involved the employment of an apartment manager who sexually assaulted a tenant. The supreme court upheld a jury verdict finding the apartment operators negligent in failing to make a reasonable investigation into the resident manager's background before providing him with a passkey. The court defined negligent hiring as

ic targets), *pet. for rev. denied* (Minn. Nov. 24,

predicated on the negligence of an employer in placing a person with known propensities, or propensities which should have been discovered by reasonable investigation, in an employment position in which, *because of the circumstances of the employment*, it should have been foreseeable that the hired individual posed a threat of injury to others.

331 N.W.2d at 911 (emphasis added).

Honeywell argues that under *Ponticas* it is not liable for negligent hiring because, unlike providing a dangerous resident manager with a passkey, Landin's employment did not enable him to commit the act of violence against Nesser. This argument has merit, and we note that a number of jurisdictions have expressly defined the scope of an employer's duty of reasonable care in hiring as largely dependent on the type of responsibilities associated with the particular job. *See Connes*, 831 P.2d at 1321 (employer's duty in hiring is dependent on anticipated degree of contact between employee and other persons in performing employment duties); *Tallahassee Furniture Co. v. Harrison*, 583 So.2d 744, 750 (Fla.Dist.Ct.App.1991) (employer's responsibility to investigate an employee's background is defined by the type of work to be done by the employee), *pet. for rev. denied* 595 So.2d 558 (Fla.1992).

*Ponticas* rejected the view that employers are required to investigate a prospective employee's criminal background in every job in which the individual has regular contact with the public. *Ponticas*, 331 N.W.2d at 913. Instead, liability is determined by the totality of the circumstances surrounding the hiring and whether the employer exercised reasonable care. The court instructed that

[t]he scope of the investigation is directly related to the severity of the risk third parties are subjected to by an incompetent employee. Although only slight care might suffice in the hiring of a yardman, a worker on a production line, or other types of employment where the employee would not constitute a high

1987).

risk of injury to third persons, * * * when the prospective employee is to be furnished a passkey permitting admittance to living quarters of tenants, the employer has the duty to use reasonable care to investigate his competency and reliability prior to employment (citations omitted).

*Id.*

Applying these principles, we conclude that Honeywell did not owe a duty to Nesser at the time of Landin's hire. Landin was employed as a maintenance worker whose job responsibilities entailed no exposure to the general public and required only limited contact with coemployees. Unlike the caretaker in *Ponticas*, Landin's duties did not involve inherent dangers to others, and unlike the tenant in *Ponticas*, Nesser was not a reasonably foreseeable victim at the time Landin was hired.

▮ To reverse the district court's determination on duty as it relates to hiring would extend *Ponticas* and essentially hold that ex-felons are inherently dangerous and that any harmful acts they commit against persons encountered through employment will automatically be considered foreseeable. Such a rule would deter employers from hiring workers with a criminal record and "offend our civilized concept that society must make a reasonable effort to rehabilitate those who have erred so they can be assimilated into the community." *Id.*

Honeywell did not breach a legal duty to Nesser by hiring Landin because the specific nature of his employment did not create a foreseeable risk of harm, and public policy supports a limitation on this cause of action. The district court correctly determined that Honeywell is not liable to Nesser under a theory of negligent hiring.

## II

▮ In recognizing the tort of negligent hiring, *Ponticas* extended established Minnesota case law permitting recovery under theories of negligent retention. *Ponticas*, 331 N.W.2d at 910. As early as 1889, the Minnesota Supreme Court allowed a plaintiff who had been beaten by defendant's employee to bring an action for negligence, reasoning that an employer

had no more right * * * to knowingly and advisedly employ or allow to be employed * * * a dangerous and vicious man, than it would have to keep and harbor a dangerous and savage dog * * *.

*Dean v. St. Paul Union Depot Co.*, 41 Minn. 360, 363, 43 N.W. 54, 55 (1889). Following *Dean*, Minnesota cases have continued to recognize the employer's duty to refrain from retaining employees with known dangerous proclivities. *See Porter v. Grennan Bakeries, Inc.*, 219 Minn. 14, 16 N.W.2d 906 (1944); *Travelers Indem. Co. v. Fawkes*, 120 Minn 353, 139 N.W. 703 (1913); *Kresko v. Rulli*, 432 N.W.2d 764, 769 (Minn.App.1988), *pet. for rev. denied* (Minn. Jan. 31, 1989).

Although some jurisdictions apparently aggregate the theories of "negligent hiring" and "negligent retention" into a single doctrine, Minnesota case law refers to them separately, suggesting that they are related, but distinct theories of recovery. *See, e.g., Ponticas*, 331 N.W.2d at 910. The difference between negligent hiring and negligent retention focuses on when the employer was on notice that an employee posed a threat and failed to take steps to insure the safety of third parties. The Florida appellate court has provided a useful definition:

Negligent hiring occurs when, prior to the time the employee is actually hired, the employer knew or should have known of the employee's unfitness, and the issue of liability primarily focuses upon the adequacy of the employer's pre-employment investigation into the employee's background (citations omitted). Negligent retention, on the other hand, occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment (citations omitted).

*Garcia v. Duffy,* 492 So.2d 435, 438–39 (Fla.Dist.Ct.App.1986).

In analyzing whether Honeywell owed Nesser a duty under a theory of negligent retention, we are obligated to review the facts in a light most favorable to Yunker. *Grondahl v. Bulluck,* 318 N.W.2d 240, 242 (Minn.1982) (appeal from summary judgment). The record contains evidence of a number of episodes in Landin's postimprisonment employment at Honeywell that demonstrate a propensity for abuse and violence towards coemployees.

While at the Golden Valley facility, Landin sexually harassed female employees and challenged a male coworker to fight. After his transfer to St. Louis Park, Landin threatened to kill a coworker during an angry confrontation following a minor car accident. In another employment incident, Landin was hostile and abusive toward a female coworker after problems developed in their friendship. Landin's specific focus on Nesser was demonstrated by several workplace outbursts occurring at the end of June, and on July 1 the words "one more day and you're dead" were scratched on her locker door.

Landin's troubled work history and the escalation of abusive behavior during the summer of 1988 relate directly to the foreseeability prong of duty. The facts, in a light favorable to Yunker, show that it was foreseeable that Landin could act violently against a coemployee, and against Nesser in particular.

This foreseeability gives rise to a duty of care to Nesser that is not outweighed by policy considerations of employment opportunity. An ex-felon's "opportunity for gainful employment may spell the difference between recidivism and rehabilitation," *Haddock v. City of New York,* 75 N.Y.2d 478, 554 N.Y.S.2d 439, 444, 553 N.E.2d 987, 992 (1990), but it cannot predominate over the need to maintain a safe workplace when specific actions point to future violence.

Our holding is narrow and limited only to the recognition of a legal duty owed to Nesser arising out of Honeywell's continued employment of Landin. It is important to emphasize that in reversing the summary judgment on negligent retention, we do not reach the remaining significant questions of whether Honeywell breached that duty by failing to terminate or discipline Landin, or whether such a breach was a proximate cause of Nesser's death. These are issues generally decided by a jury after a full presentation of facts.

## III

Finally, we reject Honeywell's argument that the negligence action is barred by the exclusive coverage provision of the Workers' Compensation Act. Three requirements must be met in order for an injury to be exclusively compensable under the Workers' Compensation Act: the injury (1) must arise out of the employment; (2) must be in the course of employment; and (3) must not come within the assault exception. *Foley v. Honeywell, Inc.,* 488 N.W.2d 268, 271 (Minn.1992).

To satisfy the second "in the course of" requirement, the injury must occur within the time and space boundaries of employment. *Id.* at 272. Nesser's murder occurred at her home several hours after her work shift ended; it is clear that the incident does not meet the "in the course of" test. Furthermore, a violent murder by a known assailant is almost certainly "intended to injure the employee because of personal reasons" within the assault exception of Minn.Stat. § 176.011, subd. 16 (1986). *See id.* at 273; *Bear v. Honeywell, Inc.,* 468 N.W.2d 546, 547 (Minn.1991).

## DECISION

We affirm the entry of summary judgment on the theories of negligent hiring and supervision, but reverse the summary judgment on the issue of negligent retention.

Affirmed in part, reversed in part, and remanded.