#25744-a-JKM

**2011 S.D. 40**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

DAVID J. IVERSON,                                    Plaintiff and Appellant,

v.

NPC INTERNATIONAL, INC.,                   Defendant and Appellee,

and

NORMAN CURTIS WILLIAMS,                Defendant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE DOUGLAS E. HOFFMAN
Judge

\* \* \* \*

STEVEN R. BINGER
Sioux Falls, South Dakota                          Attorney for plaintiff
                                                                       and appellant.


DOUGLAS M. DEIBERT of
Cadwell, Sanford, Deibert
 & Garry LLP                                               Attorneys for defendant
Sioux Falls, South Dakota                          and appellee.

\* \* \* \*

ARGUED ON APRIL 27, 2011

OPINION FILED **07/20/11**

#25744

MEIERHENRY, Retired Justice

[¶1.]        David Iverson alleged that he was attacked by NPC International's (Pizza Hut's) employee, Norman Williams, at a Pizza Hut restaurant in Sioux Falls, South Dakota. Iverson filed suit against Williams and Pizza Hut. He asserted four theories of liability: (1) vicarious liability under the doctrine of respondeat superior; (2) negligent hiring; (3) breach of duty to control an employee; and, (4) negligent supervision. The circuit court granted summary judgment in Pizza Hut's favor on all four theories. We affirm.

## Facts and Background

[¶2.]        Because this case comes to us as a result of summary judgment, we view the facts in the light most favorable to Iverson. *Advanced Recycling Sys., L.L.C. v. Se. Props. Ltd. P'ship*, 2010 S.D. 70, ¶ 10, 787 N.W.2d 778, 783. NPC International owns and operates several Pizza Hut restaurants across the United States, including the Pizza Hut located on the corner of 26th Street and Sycamore Avenue in Sioux Falls. In February 2007, Pizza Hut hired Williams as a utility worker who works behind the scenes preparing food, doing dishes, and cutting pizzas. When Williams interviewed for the position, he told the manager that he was on parole for a felony conviction in Colorado and that his conviction involved a gang-related incident of "mutual combat resulting in serious injury." The manager inquired no further into Williams's criminal history because the position was non-managerial.[1] Williams worked as a utility worker without incident for

---

1.      Pizza Hut's policy only required background checks for managerial positions. Further, Williams's actual conviction was for felony menacing with a real or
(continued . . .)

approximately seven months. During that time, Iverson also worked at Pizza Hut but was fired in July 2007 for his inability to complete tasks. Williams and Iverson remained friends after Iverson's termination and continued to spend time together at Williams's apartment.

[¶3.] The incident giving rise to this action occurred on September 8, 2007. While working at Pizza Hut, Williams phoned Iverson and asked him to come to Pizza Hut to return a CD he had borrowed. Iverson and a friend, Tony Johnson, drove to Pizza Hut. Johnson took the CD into the restaurant, walked past the manager on duty, and gave it to Williams. Williams told Johnson that he wanted to speak to Iverson directly because he believed Iverson owed him money and was avoiding him.

[¶4.] Johnson then left the restaurant and returned with Iverson. The two walked past the manager to Williams's work station. Williams directed Iverson and Johnson to the back of the restaurant. There, Williams pressed Iverson against the wall and demanded money from him. Iverson refused. Williams then struck Iverson with an open-handed uppercut punch to the chin and jaw, knocking Iverson to his hands and knees. Williams reached into Iverson's pockets and took about $100 in cash. Williams also demanded money from Johnson, who showed Williams his empty pockets. Johnson and Iverson then left.

[¶5.] Johnson and Iverson drove to a friend's apartment. Iverson was bleeding profusely, and his mouth was swelling. Iverson soon determined that he

_____

(. . . continued)
    simulated weapon. Williams also neglected to mention that he had a prior
    felony conviction in California for carjacking.

needed medical attention and drove to the hospital. X-rays revealed that his jaw was broken in three places. Iverson claimed he suffered substantial pain and incurred over $29,000 in medical and dental bills as a result of the injury.

[¶6.]    On March 6, 2008, Iverson sued Williams and Pizza Hut.[2] Iverson asserted four theories of liability against Pizza Hut: (1) vicarious liability under the doctrine of respondeat superior; (2) negligent hiring; (3) breach of the duty to control an employee; and, (4) negligent supervision. The circuit court granted summary judgment in Pizza Hut's favor on all four theories. Iverson appeals.

## Analysis and Decision

[¶7.]    Our standard of review for summary judgment is settled. We review evidence in the light most favorable to the nonmoving party and questions of law de novo. *Kirlin v. Halverson*, 2008 S.D. 107, ¶ 10, 758 N.W.2d 436, 443 (quoting *Wojewski v. Rapid City Reg'l Hosp., Inc.*, 2007 S.D. 33, ¶ 12, 730 N.W.2d 626, 631). Whether a duty exists in a "negligence action is a question of law subject to de novo review . . . ." *Id.* (quoting *Hohm v. City of Rapid City*, 2008 S.D. 65, ¶ 3, 753 N.W.2d 895, 898). If a duty exists, the remaining questions of breach and causation are factual questions that must be determined by the trier of fact. *Id.*

### *Vicarious Liability*

[¶8.]    "The ancient doctrine of respondeat superior is well established as 'holding an employer or principal liable for the employee's or agent's wrongful acts

---

2.    Williams and Pizza Hut were named as co-defendants. Williams answered the complaint but disappeared from the jurisdiction a short time later. Due to his absence, the circuit court entered a default judgment against Williams. His whereabouts remain unknown. Pizza Hut's answer was timely filed.

committed within the scope of the employment or agency.'" *Id.* ¶ 12 (quoting *Black's Law Dictionary* (8th ed. 2004)). But "[w]hen a servant acts with an intention to serve solely his own interests, this act is not within the scope of employment, and his master may not be held liable for it." *Deuchar v. Foland Ranch, Inc.*, 410 N.W.2d 177, 181 (S.D. 1987) (citing *Prosser & Keeton on the Law of Torts*, § 70, at 503 (5th ed. W. Keeton 1984)). Iverson concedes that entirely personal interests motivated Williams's assault and that Williams was not acting in furtherance of Pizza Hut's interests. Thus, he admits that the "classic application of the standards of [respondeat] superior do not apply to this case."

[¶9.]      Iverson instead argues that Pizza Hut is vicariously liable under an exception to the doctrine of respondeat superior based on the theory that Williams's agency relationship with Pizza Hut "aided [him] in accomplishing the tort." Restatement (Second) of Agency, § 219(2).[3] The Restatement recognizes that "a master may be liable for torts of servants acting solely for their own purposes" where "the servant . . . was aided in accomplishing the tort by the existence of the agency relation." In those cases, liability attaches because the tortfeasor's employment enabled or endowed him with a unique advantage to perpetrate the tortious acts. One example is a telegraph operator who sends a telegram purporting to be a person known to the recipient. The telegram asks the recipient to send money. If money is sent and the telegraph operator absconds with it, the principal

---

3.      "Of course, the Restatement's pronouncements are not binding on this Court; nevertheless, we have found its reasoning persuasive in many instances." *Chem-Age Indus., Inc. v. Glover*, 2002 S.D. 122, ¶ 33, 652 N.W.2d 756, 770.

"is subject to liability for the amount stolen." *Id.* (citing Restatement (Second) of Agency, § 261 Illustration 3). Another example of possible liability arose in *Costos v. Coconut Island Corp.*, 137 F.3d 46 (1st Cir. 1998), where a hotel manager used his manager's key to enter a woman's room and rape her. *Id.* at 48. In that circumstance, the hotel could be liable for the manager's acts.

[¶10.] In both examples, the employment position and equipment enabled the tortfeasor to accomplish the act. The telegraph operator was able to commit his tort because of access to specialized equipment and a position that enabled him to deceive the victim. Absent this equipment and position, he would not have been able to achieve his desired end. Similarly, the hotel manager's position afforded him access to the hotel's keys and allowed him to learn the location of his victim and to take advantage of her while she slept.

[¶11.] Unlike these examples, Williams's position with Pizza Hut did not enable or afford him a unique advantage to assault Iverson. The mere fact that the assault took place on Pizza Hut's property was not enough to make Pizza Hut liable under the doctrine of respondeat superior. Under these facts, the agency relationship was immaterial to Williams's tort. Williams could have accomplished his tort in any number of public or private buildings. We therefore affirm the circuit court's order granting summary judgment on Iverson's vicarious liability claim.

### *Negligent Hiring*

[¶12.] Iverson claims that Pizza Hut was negligent when it hired Williams because it knew that Williams had a prior gang-related felony conviction yet did not

do a background check. We recognized an employer's limited duty to conduct a pre-employment background investigation in *McGuire v. Curry*. 2009 S.D. 40, ¶ 15, 766 N.W.2d 501, 507 (quoting *Kirlin*, 2008 S.D. 107, ¶ 45, 758 N.W.2d at 452). We stated that the employer's duty exists *at the time the employee is hired* and depends on the degree of contact the employee will have with the public in the prospective job. *Id.* (emphasis added) (quoting *Kirlin*, 2008 S.D. 107, ¶ 45, 758 N.W.2d at 452). "When an employee comes into minimum contact with the public or those in a special relationship with the employer, the employer need not perform a background investigation." *Id.* But "[t]he opposite is true when the employee makes frequent contact with the public and those in a special relationship with the employer." *Id.*

[¶13.]     Iverson argues that if Pizza Hut had conducted a background check, it would have discovered that Williams also had a felony conviction for carjacking and that he was dishonest about the nature of his other felony conviction. Iverson claims that Williams had sufficient contact with the public to have required Pizza Hut to conduct a background investigation. Iverson emphasizes several of the duties Williams performed at Pizza Hut, which included waiting tables, assisting customers at the cash register, cleaning tables in the public seating area, and preparing the salad bar. He also points out that, even when Williams was not in direct contact with the public, he was working about ten to fifteen feet away from customers.

[¶14.]     Pizza Hut, on the other hand, points out that it initially hired Williams as a utility worker, whose primary duties were cutting and preparing pizzas.

Although he eventually gained the trust of the managerial staff and was allowed to take on greater responsibilities, his original position did not encompass these additional duties. Pizza Hut argues that Williams's responsibilities at the time he was hired did not require further inquiry into Williams's background. We agree.

[¶15.]     At the time Pizza Hut hired Williams, his anticipated responsibilities were cutting and preparing pizzas in the back of Pizza Hut away from the public. Even though Williams worked only a short distance from customers and potentially could have contact with customers, that contact was only incidental to his job. This is the same type of "incidental contact" that did not require the employer to conduct a background check in *Kirlin*, 2008 S.D. 107, ¶ 49, 758 N.W.2d at 453. Because at the time Williams was hired he was only to have incidental contact with the public, Pizza Hut did not have a duty to inquire further into Williams's background. We therefore affirm the circuit court's order granting summary judgment on Iverson's negligent hiring claim.

***Duty to Control***

[¶16.]     Iverson's next theory of liability against Pizza Hut is that it breached its duty to control Iverson. "Generally, the law imposes no duty to prevent the misconduct of a third person." *Id.* ¶ 30 (quoting *State Auto Ins. Co. v. B.N.C.*, 2005 S.D. 89, ¶ 22, 702 N.W.2d 379, 387). We have recognized several exceptions to this general rule, including the employer's duty to control employees. *Id.* To show a duty to prevent the misconduct of a third party, the plaintiff must show (1) that a special relationship exists between the parties and (2) that the third party's

injurious act was foreseeable. *See* Restatement (Second) of Torts, § 317. *See also*
*Kirlin,* 2008 S.D. 107, ¶ 31, 758 N.W.2d at 448-49.

*Special Relationship*

[¶17.]     The existence of a special relationship in this case stems from Pizza
Hut's employment of Williams. Because the incident took place on Pizza Hut's
premises, Pizza Hut had a "duty to exercise reasonable care to control [Williams]
while [he was] acting outside the scope of his employment . . . to prevent him from
intentionally harming others." *See* Restatement (Second) of Torts § 315(a)[4] and §
317(a)(i).[5] *See also Kirlin,* 2008 S.D. 107, ¶ 34, 758 N.W.2d at 449.

---

4.     The Restatement (Second) of Torts, § 315 "reflects this Court's special
       relationship prong of the duty to prevent the misconduct of a third person."
       *Kirlin,* 2008 S.D. 107, ¶ 32, 758 N.W.2d at 449 (quotations omitted). Section
       315 provides:

> There is no duty to control the conduct of a third person as to
> prevent him from causing physical harm to another unless
>
> (a)     a special relation exists between the actor and the third
>         person which imposes a duty upon the actor to control the
>         third person's conduct, or
>
> (b)     a special relation exists between the actor and the other
>         which gives to the other a right to protection.

       Subsection (a) "presents the requirements for a special relationship" in a duty
       to control claim." *Id.* (quotations omitted). Under this subsection, the "actor"
       is the person alleged to have the duty, and the "third person" is the person to
       be controlled. Here, Pizza Hut is the "actor" and Williams is the "third
       person." "Comment c. to this Section directs that 'the relations between the
       actor and a third person which require the actor to control the third person's
       conduct are stated in §§ 316-319.'" *Id.* (citation omitted).

5.     Restatement (Second) of Torts, § 317 provides:

(continued . . .)

[¶18.]    We have previously held that "the ability to control can be satisfied by the mere power to threaten dismissal." *Id.* ¶ 38. *See* Restatement (Second) of Torts, § 317 cmt b. Here, Pizza Hut had the ability to either discipline or terminate Williams. As a result, Iverson has shown a special relationship existed between Pizza Hut and Williams.

*Foreseeability*

[¶19.]    Iverson must also show foreseeability in that Pizza Hut "kn[ew] or ha[d] reason to know that [it] had the ability to control [Williams], and [knew or should have known] of the necessity and opportunity for exercising such control." Restatement (Second) of Torts, § 317(b)(ii). This is where Iverson's argument falls short. We set forth a clear standard for addressing foreseeability in *Kirlin*:

> Wrongful activity can be foreseeable upon common experience. We use the "totality of circumstances test" in evaluating

---

(. . . continued)

> A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
>
> > (a)    the servant
> >
> > > (i)    is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
> > > (ii)   is using a chattel of the master, and
> >
> > (b)    the master
> >
> > > (i)    knows or has reason to know that he has the ability to control his servant, and
> > > (ii)   knows or should know of the necessity and opportunity for exercising such control.

> foreseeability.  Liability is not contingent upon foreseeability of the "extent of the harm or the manner in which it occurred." This means that the *exact harm* need not be foreseeable. Rather, the harm need only be *within the class* of reasonably foreseeable hazards that the duty exists to prevent.

*Kirlin*, 2008 S.D. 107, ¶ 38, 758 N.W.2d at 451 (quoting *State Auto Ins. Co.*, 2005 S.D. 89, ¶ 25, 702 N.W.2d at 388-89).

[¶20.]     Foreseeability is viewed from the allegedly negligent party's perspective – in this case Pizza Hut – and does not depend on the employee's prior similar behavior.[6]  "A prior similar act" as a prerequisite to a duty under a foreseeability analysis was rejected nearly a quarter-century ago in *Small v. McKennan Hosp.*, 403 N.W.2d 410, 413 (S.D. 1987).  In that case, we stated "that strict adherence to the 'prior similar acts' rule is unduly restrictive and places too great a burden on the plaintiff. . . .  'The duty to foresee a risk of harm is dependent upon all the surrounding facts and circumstances and may require further investigation or inquiry before action is taken.'"  *Id.* (quoting *Ward v. LaCreek Elec. Ass'n*, 83 S.D. 584, 588, 163 N.W.2d 344, 346 (1968)).  Therefore, we must look to all the circumstances surrounding this incident to determine whether Pizza Hut should have foreseen Williams's tortious conduct.

[¶21.]     The only circumstance Iverson can point to as evidence of foreseeability is Williams's parole status for a violent, gang-related felony.  Except for Williams's felony conviction, there was no evidence that Williams ever displayed

---

6.     Pizza Hut devotes a substantial portion of its foreseeability argument to Iverson's admission that he did not foresee the attack when he entered the restaurant to visit Williams.  Whether Iverson could foresee the attack is irrelevant.

violent tendencies while employed at Pizza Hut. In fact, Williams was a model employee. Further, Iverson and Williams worked together peacefully and remained friends after Iverson was fired. One could not conclude, based on the surrounding facts and circumstances, that Williams's attack of Iverson was "within the class of reasonably foreseeable hazards." *Kirlin*, 2008 S.D. 107, ¶ 38, 758 N.W.2d at 450.[7]

[¶22.]     Because Iverson has not satisfied the foreseeability prong, he has not shown that Pizza Hut had a duty to control Williams. We therefore affirm the circuit court's order granting summary judgment on Iverson's duty to control claim.

***Negligent Supervision***

[¶23.]     Iverson's final theory of liability against Pizza Hut is for negligent supervision. Although there is some overlap between this cause of action and the duty to control theory, they are separate causes of action. We explained this distinction in *McGuire*:

> A negligent supervision claim alleges that the employer
> inadequately or defectively managed, directed or oversaw its
> employees. The Restatement, § 317, on the other hand,
> implicates an employer's duty to control employees when the
> employees are acting outside the scope of employment. While

---

7.     In *Kirlin*, this Court recognized that "public policy is a major consideration in identifying a legal duty." 2008 S.D. 107, ¶ 52, 758 N.W.2d at 453 (quoting *Yunker v. Honeywell, Inc.,* 496 N.W.2d 419, 421 (Minn. Ct. App. 1993)). In our discussion of the negligent hiring and retention argument in that case, we noted that to impose a duty on an employer based on an employee's limited criminal history would "create severe consequences for employees throughout the state." *Id.* Imposing such a duty would "expose employers of those with *some* evidence of a violent past to potential liability . . . , [which] might make employers hesitant to hire those people, severely limiting employment opportunities." *Id.* "Such a rule would deter employers from hiring workers with a criminal record and 'offend our civilized concept that society must make a reasonable effort to rehabilitate those who have erred so they can be assimilated into the community.'" *Id.*

> both a negligent supervision claim and a Restatement § 317 claim might involve conduct outside the scope of employment, a negligent supervision claim implicates more than the employer's duty to control the employee. A claim of negligent supervision avers that the employer failed to exercise reasonable care in supervising (managing, directing, or overseeing) its employees so as to prevent harm to other employees or third persons. A duty to control, in contrast, examines whether the employee caused harm while using a chattel of the employer or while on the premises of the employer, which conduct the employer could and should control.

2009 S.D. 40, ¶ 22, 766 N.W.2d at 509 (internal citations omitted). "A prerequisite to proceeding on [this] cause of action is establishing the existence of a duty." *Id.* (citing *Poelstra v. Basin Elec. Power Coop.*, 1996 S.D. 36, ¶ 7, 545 N.W.2d 823, 825). The duty involved in a negligent supervision claim is one of ordinary care. *Kirlin*, 2008 S.D. 107, ¶ 43, 758 N.W.2d at 451. While the duty to control concerns the employer's handling of its special relationship with its employee, the general duty concerns the employer's duty to conduct itself reasonably. *Id.* Like the duty to control, the existence of the duty of ordinary care depends on the foreseeability of the injury. *McGuire*, 2009 S.D. 40, ¶ 21, 766 N.W.2d at 509.

[¶24.] In both *McGuire* and *Kirlin*, we concluded that the employer had a duty to supervise its employee. In *McGuire*, the employer, a racetrack operator, employed an underage employee as a runner who delivered "alcohol and other supplies to its concession stands and bars." 2009 S.D. 40, ¶ 23, 766 N.W.2d at 509. This runner took advantage of his access to the racetrack's alcohol and drank to excess while at work. One night after the employee left work for the evening, he recklessly drove from the racetrack's property. While driving on the wrong side of the road, his vehicle hit a motorcycle, seriously injuring the passenger. There, we

determined that the employer had a duty to supervise its underage employee because it was "foreseeable that by providing an underage employee unrestricted and unsupervised access to alcoholic beverages, the employee could take advantage of the lax circumstances and indulge to excess." *Id.* ¶ 23.

[¶25.] In *Kirlin*, two competing businesses, Empire HVAC and Carrier Commercial Services, had employees working on the roof of the Empire Mall. 2008 S.D. 107, ¶ 2, 758 N.W.2d at 441-42. The Empire Mall terminated its maintenance contract with Empire HVAC and replaced it with Carrier. In the transition, employees from both businesses were on the roof together. Words were exchanged, and the Empire Mall's manager was called to diffuse the situation. The next day, the same Carrier employee and a different Empire HVAC employee were working on the roof at the same time on separate tasks. Hostility between the two immediately arose. A dispute erupted about whether the Carrier employee could use a filter that belonged to Empire HVAC. Words were again exchanged, resulting in a skirmish. The Empire HVAC employee then beat and kicked the Carrier employee into unconsciousness. *Id.* This Court ultimately concluded that a duty existed under a negligent supervision claim because the possibility that a dispute could arise based on the previous day's altercation was foreseeable, and because Empire HVAC had not acted reasonably in advising its employee of the potential for conflict. *Id.* ¶ 41.

[¶26.] *McGuire and Kirlin*, however, are inapposite here. In *McGuire*, the employee's age and access to alcohol warranted imposing a duty because it was foreseeable that harm could result. In *Kirlin*, conflict existed between the

businesses' employees on consecutive days, the employees were working in the same small area, and the environment was hostile. As a result, it was sufficiently foreseeable that some harm could follow. So in both *McGuire* and *Kirlin*, this Court imposed a duty on the employers because it was foreseeable that specific harms could result.

[¶27.] Here, Iverson cites Williams's parole status and the presence of Pizza Hut's manager as support for his negligent supervision claim. Iverson apparently contends that Pizza Hut's alleged negligent conduct was allowing Iverson and Johnson to be in the back of Pizza Hut with Williams. But at the time Iverson was injured, it was not foreseeable that Williams would attack Iverson. *McGuire*, 2009 S.D. 40, ¶ 19, 766 N.W.2d at 508 ("Foreseeability in the duty sense is examined at the time of the alleged negligence, not at the time injury occurred.") (citing *First Am. Bank & Trust, N.A. v. Farmers State Bank of Canton*, 2008 S.D. 83, ¶ 46, 756 N.W.2d 19, 32 (Konenkamp, J., dissenting); *Poelstra*, 1996 S.D. 36, ¶ 18, 545 N.W.2d at 827).

[¶28.] As discussed in the duty to control issue, Williams's parole status did not make it sufficiently foreseeable that he would attack Iverson. *See supra* ¶ 21 (recognizing that Williams was a model employee, he and Iverson were friends, and he had never displayed a propensity for violence while employed at Pizza Hut). Iverson's walk past the manager similarly did not make it sufficiently foreseeable that Williams would attack him. The manager's presence does not alter our foreseeability analysis. Given the surrounding facts and circumstances, it was not sufficiently foreseeable to impose a duty on Pizza Hut to prevent Iverson from

meeting with Williams at the restaurant. *See supra* ¶ 21. We therefore affirm the circuit court's order granting summary judgment on Iverson's negligent supervision claim.

[¶29.] Affirmed.

[¶30.] GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, and MACY, Circuit Court Judge, concur.

[¶31.] MACY, Circuit Court Judge, sitting for SEVERSON, Justice, disqualified.