#30228-a-MES
**2023 S.D. 63**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DANIEL CEPLECHA,                                   Petitioner and Appellant,

    v.

DAN SULLIVAN, Warden
South Dakota State Penitentiary,                   Respondent and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
BENNETT COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE MARGO D. NORTHRUP
Judge

* * * *

RYAN KOLBECK
Sioux Falls, South Dakota            Attorney for petitioner and
                                     appellant.


MARTY J. JACKLEY
Attorney General

PAUL S. SWEDLUND
Solicitor General
Pierre, South Dakota                 Attorneys for respondent and
                                     appellee.

* * * *

CONSIDERED ON BRIEFS
AUGUST 29, 2023
SUPPLEMENTAL BRIEFS
RECEIVED
SEPTEMBER 26, 2023
OPINION FILED **11/29/23**

#30228

SALTER, Justice

[¶1.]  Daniel Ceplecha is serving a life sentence in prison after he pled guilty to first-degree manslaughter.  He filed a petition for writ of habeas corpus claiming he is actually innocent and alleging his trial counsel rendered ineffective assistance by not assuring Ceplecha understood his right to assert a self-defense claim.  The habeas court granted the State's[1] motion to dismiss, concluding that we had previously considered Ceplecha's claims on direct appeal, which precluded their relitigation under the doctrine of res judicata.  The court then issued a certificate of probable cause, and Ceplecha appeals.  We affirm.

## Factual and Procedural History

### *The killing of Moses Red Bear and the plea agreement*

[¶2.]  Ceplecha and his son, Rangler, were originally charged with alternative counts of first- and second-degree murder along with conspiracy to commit murder in connection with the 2016 death of Moses Red Bear at the Ceplechas' home in Martin.  Law enforcement reports submitted to the circuit court indicated that Red Bear had been shot seven or eight times with two different firearms—twice in the right thigh, three times in the chest and abdomen area, once behind the right ear, once between Red Bear's eyes, and a possible shot in the left hand.  A witness present in the home was in a nearby bathroom and heard the Ceplechas berating and shooting Red Bear.

---

1.    Though the warden of the state penitentiary is named as the respondent, he is, of course, holding Ceplecha as an agent of the State which we will use as the reference for the respondent here.

[¶3.] After they had killed Red Bear, Ceplecha and his son carried his body to a rural area and set it on fire in an apparent attempt to conceal their crime. However, the witness at the Ceplecha home had promptly reported the killing, and police officers apprehended the Ceplechas within hours and recovered Red Bear's badly disfigured body.

[¶4.] Ceplecha spoke to a Division of Criminal Investigation (DCI) special agent and advised that Red Bear had been staying at his home. Ceplecha said he had confronted Red Bear about stealing some items and cash and told him to leave. However, Red Bear returned a short while later, and Ceplecha struck him in the nose, causing it to bleed. After this point, Ceplecha claimed he had blacked out and had no memory of anything until he was apprehended by law enforcement officers at a local convenience store. At no time during the interview did Ceplecha claim to have shot Red Bear in self-defense.

[¶5.] And virtually all of the other evidence adduced cast serious doubt upon Ceplecha's claim that he had blacked out. In addition to the witness's report that Ceplecha had acted with his son to torment and kill Red Bear, surveillance footage from the convenience store shows the Ceplechas, shortly after the killing, stopping for sandwiches, coffee, and, portentously, a lighter en route to disposing of Red Bear's body. The surveillance video also shows the Ceplechas later returned to the convenience store where, the DCI special agent observed, Ceplecha was not in a "blackout condition" as he paid for coffee and conversed with the clerk.

[¶6.] Ultimately, Ceplecha and his son each pled guilty to first-degree manslaughter as part of written plea agreements with the State, which agreed to

dismiss the murder and conspiracy charges. Neither agreement imposed any limit upon the exercise of the circuit court's sentencing discretion. As part of his plea agreement, Ceplecha agreed that the circuit court could use a 77-page exhibit containing police reports and investigative material to find a factual basis for his plea. Among other things, the exhibit contained a report of Ceplecha's interview with the DCI special agent and a report of an interview of the witness who had been in the Ceplechas' home when they killed Red Bear.

### The change of plea and effort to withdraw the guilty plea

[¶7.]    During a joint change of plea hearing with his son, the circuit court advised Ceplecha that the maximum punishment for first-degree manslaughter was life in prison without the possibility of parole. The court also explained the extent of its sentencing discretion and Ceplecha's risk associated with the plea agreement:

> The court:    And the Court could in fact impose the maximum sentence which is life imprisonment. Do you understand?
>
> Ceplecha:    Yes, Your Honor.
>
> The court:    And if the Court does impose life imprisonment and chooses to do that, there is a statute that indicates that you would not be eligible for parole. Do you understand all of that?
>
> Ceplecha:    Yes, Your Honor.

[¶8.]    The circuit court told Ceplecha that the feature of manslaughter that refers to a killing "without design to effect a death" was not, itself, an affirmative

element of the offense.[2] But the court noted that under the parties' plea agreement, Ceplecha was acknowledging that he had killed Red Bear without any design to effect death. The court accepted Ceplecha's guilty plea after finding it was knowing and voluntary and supported by a factual basis.[3]

[¶9.] Over two months after the change of plea hearing and approximately one month before the scheduled sentencing hearing, Ceplecha and his son submitted a joint, pro se letter to the court in which they purported to withdraw their guilty pleas. Among their stated reasons for reconsidering their guilty pleas, the Ceplechas wrote, "We are not guilty of the charges." This claim of innocence is the same one presented in the current habeas action, and the circuit court directly addressed it.

[¶10.] Treating the Ceplechas' letter as a pro se motion to withdraw their guilty pleas, the circuit court conducted an evidentiary hearing at which both Ceplecha and his son testified. During his testimony, Ceplecha admitted to lying about blacking out and claimed he acted in self-defense after Red Bear was "swinging a gun at me." Ceplecha agreed with the prosecutor that it was the "first

---

2. Under the plea agreement, Ceplecha and his son agreed to plead guilty to the first-degree manslaughter theory described in SDCL 22-16-15(3)—a homicide perpetrated "[w]ithout any design to effect death . . . but by means of a dangerous weapon[.]"

3. Ceplecha also admitted to the circuit court that he caused Red Bear's death.

time [he had] told the State" that he had shot Red Bear in self-defense and added the incongruent justification, "Why would I incriminate myself."[4]

[¶11.] In a post hearing brief, John Murphy, Ceplecha's court-appointed attorney, argued that his client's request to withdraw his guilty plea was not frivolous, theorizing that Ceplecha may have believed that the manslaughter offense and his self-defense claim were one in the same because neither, as alleged, contemplated an intentional killing:

> It is conceivable that Mr. Ceplecha believed that self-defense was not a defense available to him for a charge of first degree manslaughter because the charge already contained the unintended killing element. In essence, it appears Mr. Ceplecha is arguing that he believed self-defense was subsumed into, or negated by, the elements of first degree manslaughter.

[¶12.] The circuit court denied the Ceplechas' request to withdraw their guilty pleas in a written memorandum opinion. The court cited the principle that allowed it to deny a motion to withdraw a guilty plea where it is frivolous, meaning the defendant "fails to provide a tenable reason why withdrawal should be permitted, a reason the court deems fair and just." *See State v. Schmidt*, 2012 S.D. 77, ¶ 16, 825 N.W.2d 889, 894 (cleaned up). Among the factors the court considered in its fair and just analysis was "[w]hether the defendant asserts he is innocent[.]"

[¶13.] In this regard, the circuit court observed that, besides their belated claims of self-defense, "the Defendants produced no evidence to support their apparent claim of self-defense." The court continued:

---

4. Rangler Ceplecha testified that he and his father both shot Red Bear, but Rangler claimed that he had done so "in defense of my home, my family, and the people in my house" because Red Bear was "waving a 45."

> Neither [of the Ceplechas] asserted innocence at the change of plea hearing. The record which was presented contained not a shred of evidence that Red Bear had a gun. There is substantial evidence, however, that the Defendants shot Red Bear several times with separate firearms. On top of that, there is overwhelming evidence that the Defendants attempted to cover up their crime by cleaning the scene and burning the body. *The Defendants' testimony regarding self-defense is simply not credible.*

(Emphasis added.)

[¶14.] The circuit court also commented that the favorable aspect of the plea agreement that "took the mandatory life sentence off the table" was negotiated by defense counsel amid "very strong" evidence of murder. Still too, the court cited its careful efforts to assure a provident guilty plea for each of the Ceplechas and its reassertion that the pleas were knowing and voluntary. In the court's view:

> [T]he real reason for the Defendants' motion to withdraw plea is not actual innocence, but instead the desire for a "do over" and chance to go to trial because they might get a life sentence.[5] This is not a fair and just reason to withdraw a guilty plea.

[¶15.] At a subsequent joint sentencing hearing, the circuit court imposed life sentences upon each of the Ceplechas.

---

5.  Rangler testified that he was motivated to seek withdrawal of his guilty plea after he explained "my side of it" to the pre-sentence investigation writer who noted differences with the other evidence. Rangler suspected that "if they don't believe my side of it, then I'm going to get life anyway."

***The direct appeal***

[¶16.]	Ceplecha and his son each appealed and argued that the circuit court had abused its discretion by not allowing them to withdraw their guilty pleas.[6] We rejected the claim, endorsing the circuit court's finding that the Ceplechas' testimony was self-serving and "simply not credible." *State v. Ceplecha*, 2020 S.D. 11, ¶¶ 52–53, 940 N.W.2d 682, 696–97 (*Ceplecha I*). We noted, as the circuit court had, the delayed nature of the Ceplechas' self-defense claims and the absence of any other evidence to support them. *Id.*

[¶17.]	We also agreed with the circuit court's assessment that the guilty pleas had been knowing and voluntary, stating that the record was devoid of any evidence suggesting either guilty plea was involuntary. *Id.* ¶ 51, 940 N.W.2d at 696. Our ultimate conclusion was stated in unequivocal terms: "Based on the circuit court's detailed colloquy with each defendant and their unequivocal answers to the court's advisement, we have no doubt that both Daniel's and Rangler's guilty pleas were knowing, voluntary, and intelligent." *Id.*

***The habeas action***

[¶18.]	In an amended habeas corpus petition, Ceplecha alleged that Murphy rendered ineffective assistance of counsel by permitting the entry of a guilty plea without a sufficient factual basis and for failing to investigate a self-defense theory. The State moved to dismiss the habeas action pursuant to SDCL 15-6-12(b)(5). In its supporting brief to the habeas court, the State focused upon the second prong of

---

6.	Rangler also appealed a separate decision by the court denying his request for substitute counsel. Both of the Ceplechas challenged their sentences as well. None of the claims were successful.

the accepted test for ineffective assistance of counsel that requires a showing that counsel's errors were prejudicial.[7]

[¶19.]    The State argued that Ceplecha could not succeed on his ineffective assistance of counsel claim because he could not demonstrate prejudice. Citing rules set out in our prior decisions, the State contended that any failure to advise Ceplecha of a potential defense could only be considered prejudicial if he was able to show that it likely would have been successful at trial. However, because we affirmed the circuit court's determination that Ceplecha's self-defense claim was "not credible" in *Ceplecha I*, the State asserted that the effort to litigate the viability of the self-defense claim under a theory of ineffective assistance of counsel was barred under the doctrine of res judicata.

[¶20.]    The habeas court agreed and granted the motion to dismiss. Moving directly to the prejudice prong for assessing ineffective assistance of counsel claims, the court noted that "this inquiry depends not only on whether the affirmative defense likely would have succeeded at trial but more importantly, whether the trial court previously ruled that it would not." As noted above, the circuit court had, indeed, found Ceplecha's self-defense claim to be not credible and nothing more than a frivolous reason for withdrawing his guilty plea—a result that was challenged on direct appeal and decided adversely to Ceplecha. The habeas court

---

7.    "We have adopted the test for ineffective assistance of counsel set forth in *Strickland v. Washington*: first, the defendant must show that counsel's performance was so deficient that he was not functioning as 'counsel' guaranteed by the Sixth Amendment; and second, he must show that counsel's deficient performance prejudiced the defendant." *Steiner v. Weber*, 2011 S.D. 40, ¶ 6, 815 N.W.2d 549, 551–52 (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984)).

concluded that the claim that Ceplecha was actually innocent had been fully litigated in *Ceplecha I.*

[¶21.] Specifically, the habeas court determined that *Ceplecha I* affirmed the circuit court's determination that Ceplecha's self-defense claim would not have succeeded at trial. For this reason, the habeas court also determined that Ceplecha's claim that Murphy was responsible for an inadequate factual basis at the change of plea hearing was also barred because it turned on the likely success of a self-defense claim. And so too was the specific claim that Murphy failed to investigate the self-defense claim. Simply put, there could be no prejudice from the failure to investigate a self-serving and frivolous defense.

[¶22.] The habeas court issued a certificate of probable cause, but it did not reference the res judicata ruling. Instead, the certificate referred to the merits of the ineffective assistance of counsel theories that the habeas court had *not* reached.

[¶23.] In his appellate brief, Ceplecha claimed the certificate of probable cause is "intrinsically contradictory" and allowed a merits review of his individual ineffective assistance of counsel arguments relating to self-defense. Ceplecha's initial appellate submissions did not address the habeas court's res judicata ruling, but the State's brief did.

[¶24.] We concluded that the certificate of probable cause's focus upon the Sixth Amendment right to effective assistance of counsel necessarily contemplated the basis upon which the habeas court had denied relief—res judicata—rather than the merits. So, in an effort to allow the parties to develop their specific res judicata

arguments, we ordered supplemental briefing to address "[w]hether the doctrine of res judicata bars Appellant's ineffective assistance of counsel claim."

## Analysis and Decision

### *Res judicata in habeas cases*

[¶25.]     We have recognized that habeas corpus actions are exceptional in the sense that they represent post-conviction, collateral attacks on otherwise final judgments of conviction.  *See Piper v. Young*, 2019 S.D. 65, ¶ 21, 936 N.W.2d 793, 803–04 (*Piper IV*) (citing cases and describing habeas corpus proceedings as "collateral attack[s]" on final judgments and not "a substitute" for direct review). Still, the ancient remedy, now codified in SDCL chapter 21-27, remains fixed as a means of correcting certain types of errors in an underlying criminal action by challenging the authority of an official to hold the petitioner.

[¶26.]     However, not all alleged errors are cognizable in a habeas action. Some claims, or necessary constituent parts of them, were either litigated on direct appeal or could have been.  These claims are subject to preclusion in a subsequent habeas action under the doctrine of res judicata.  In *Piper IV*, we recognized that "even for claims alleging the deprivation of constitutional rights, we have traditionally applied the doctrine of res judicata to determine whether a post-conviction claim is cognizable in a habeas corpus action or whether it has been defaulted because it was not made in an earlier proceeding."  2019 S.D. 65, ¶ 22, 936 N.W.2d at 804.

[¶27.]     We have recognized two "distinct" types of res judicata—issue preclusion and claim preclusion:

> Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided . . . . Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit[.]

*Id.*; *see also Ramos v. Weber*, 2000 S.D. 111, ¶ 8, 616 N.W.2d 88, 91 (applying claim preclusion to bar a petitioner's claim that could have been litigated on direct appeal but was not).[8]

[¶28.]     Here, the habeas court correctly determined that Ceplecha's habeas claims were each barred by res judicata because their common element was previously litigated unsuccessfully on direct appeal.[9]  For this reason, the court determined that Ceplecha could not satisfy *Strickland's* second prong relating to prejudice without regard to whether Murphy's representation was deficient or not. *See Jenner v. Dooley*, 1999 S.D. 20, ¶ 16, 590 N.W.2d 463, 471 (quoting *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069) (adopting the United States Supreme Court rule

8.     We have held that a habeas petition is subject to dismissal under SDCL 15-6-12(b)(5) for failing to state a claim upon which relief can be granted, and we have suggested that the rule can be used in the context of res judicata. *See Riley v. Young*, 2016 S.D. 39, ¶ 2 n.1, 879 N.W.2d 108, 110 n.1 (reviewing dismissal under SDCL 15-6-12(b)(5) and noting applicability to an issue barred by res judicata).  The Eighth Circuit Court of Appeals has held that res judicata can serve as the basis for dismissal under Federal Rule of Civil Procedure 12(b)(6), which corresponds to SDCL 15-6-12(b)(5). *See C.H. Robinson Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012) (holding res judicata is an affirmative defense which can serve as a basis for dismissal under Rule 12(b)(6) when it is apparent from the "face of the complaint" which includes "public records embraced by the complaint").

9.     We review a circuit court's application of the doctrine of res judicata de novo. *Am. Fam. Ins. Grp. v. Robnik*, 2010 S.D. 69, ¶ 14, 787 N.W.2d 768, 774 (citation omitted).  We also apply the de novo standard to review a habeas court's decision to dismiss a petition as a matter of law and without receiving evidence. *Steiner*, 2011 S.D. 40, ¶ 4, 815 N.W.2d at 551.

allowing a habeas court to move directly to *Strickland's* prejudice analysis "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice").

[¶29.]      For habeas cases involving underlying guilty pleas, the petitioner must satisfy the prejudice requirement by establishing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Piper IV*, 2019 S.D. 65, ¶ 51, 936 N.W.2d at 811 (citation omitted). Ultimately, prejudice depends upon a court's determination that "in the absence of the guilty plea . . . the outcome of the proceeding would have been different." *Id.* (citation omitted).

[¶30.]      As is relevant here, the habeas court distilled Ceplecha's habeas claims relating to Murphy's alleged ineffectiveness to the following:

- Murphy "fail[ed] to advise[] Ceplecha on the affirmative defense of self-defense."

- Murphy "fail[ed] to ensure that Ceplecha provided an adequate factual basis prior to entering a [guilty] plea."

- Murphy "fail[ed] to investigate" a self-defense claim.[10]

[¶31.]      At the heart of these claims is the allegation that Murphy did not advise Ceplecha of the potential for a self-defense claim. Where the ineffective

---

10.    For the most part, Ceplecha's description of his ineffective assistance of counsel claims is consistent with the habeas court's description with the exception of Ceplecha's appellate claim that Murphy "did not effectively [and] zealously advocate for the withdrawal of the Petitioner's guilty plea." Based upon our review of the amended habeas petition, this latter claim was not alleged and was not before the habeas court. But even if it had been, demonstrating prejudice depends upon the strength of Ceplecha's self-defense claim in the same way as the other specific claims.

assistance of counsel claims relate to the asserted "failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Steiner*, 2011 S.D. 40, ¶ 9, 815 N.W.2d at 552 (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068). And so, without a colorable self-defense claim, any failure by Murphy to advise of it, investigate it, or assure it was discussed at the change of plea hearing would not satisfy *Strickland's* second prong requiring prejudice.

[¶32.] As the habeas court correctly recognized, the strength or sustainability of Ceplecha's self-defense claim was assessed initially by the circuit court in the underlying prosecution. The circuit court determined that the self-defense claim was "simply not credible" in connection with its consideration of whether Ceplecha was legitimately asserting he was actually innocent. The same issue was squarely presented before us on direct appeal in *Ceplecha I*, and we agreed with the circuit court's view that Ceplecha's testimony about defending himself was purely self-serving. Because the court had "weighed the Ceplechas' claims of self-defense[,]" we accepted the court's "not credible" finding as it related to whether Ceplecha had a sustainable claim of innocence, and we affirmed the court's decision to deny Ceplecha's motion to withdraw his guilty plea.

[¶33.] The fact that the context for considering the self-defense claim was different in *Ceplecha I* than it is here does not change the result. In fact, it strengthens it because the standard for withdrawing a guilty plea prior to

sentencing seems to be more favorable to a defendant than the standard for prejudice under *Strickland* is for a habeas petitioner.

[¶34.] Where a defendant makes a motion to withdraw a guilty plea pursuant to SDCL 23A-27-11 prior to sentencing, as Ceplecha did, "a court should exercise its discretion liberally in favor of withdrawal." *Ceplecha I*, 2020 S.D. 11, ¶ 38, 940 N.W.2d at 694 (quoting *State v. Kvasnicka*, 2016 S.D. 2, ¶ 8, 873 N.W.2d 705, 708). A defendant need only demonstrate a "fair and just" reason for withdrawal. *Id.* ¶ 39, 940 N.W.2d at 694 (quoting *United States v. Hyde*, 520 U.S. 670, 671, 117 S. Ct. 1630, 1631, 137 L. Ed. 2d 935 (1997)). We have also held that a request to withdraw a guilty plea may not be "frivolous." *Schmidt*, 2012 S.D. 77, ¶ 15, 825 N.W.2d at 894 (quoting *State v. Olson*, 2012 S.D. 55, ¶ 18, 816 N.W.2d 830, 835–36).

[¶35.] By contrast, *Srickland's* prejudice showing focuses upon a more rigorous, outcome-determinative inquiry. A habeas petitioner who pled guilty must establish that the petitioner would not have pled guilty and that a previously unasserted defense "would have succeeded at trial." *Steiner*, 2011 S.D. 40, ¶ 9, 815 N.W.2d at 552 (citation omitted).

[¶36.] Here, the circuit court's determination that Ceplecha's self-defense claim was "simply not credible," after receiving argument and testimony, equated to a determination that it was frivolous—a conclusion we affirmed in *Ceplecha I*. This necessarily precludes a contrary showing that the self-defense claim is meritorious enough to justify habeas relief. Indeed, allowing Ceplecha to now argue that his self-defense claim *was* meritorious—so much so that he would likely have succeeded

at trial—would effectively overrule our decision in *Ceplecha I* affirming the circuit court's decision to deny his request to withdraw his guilty plea.

[¶37.]    Ceplecha relates this case to our decision in *Steiner*, claiming "[t]his case is the same as *Steiner* and the Petitioner should be able to have a hearing." We do not think the comparison to *Steiner* is apt. In *Steiner*, our decision to reverse the dismissal of the petitioner's habeas petition and remand the case for an evidentiary hearing was a reflection of the underdeveloped state of the record. As it related specifically to the prejudice inquiry, we observed that "this Court is not in a position to speculate as to whether Steiner would have been successful if he had taken his case to trial. Nor was the circuit court in such a position when ruling on the motion to dismiss." *Steiner*, 2011 S.D. 40, ¶ 11, 815 N.W.2d at 553.

[¶38.]    This case is much different. Here, the circuit court *was* in a position to assess the strength of Ceplecha's self-defense claim in the underlying prosecution, and we recognized as much with our holding in *Ceplecha I*. Ceplecha and his son both testified, and the circuit court received written briefs from both parties. Ceplecha's brief raised the very topic he presses now in this habeas action—that he conflated the "unintentional killing" aspect of manslaughter with a lack of intent to kill when acting in self-defense. The circuit court rejected the claim, and we affirmed that determination. Ceplecha cannot relitigate the same issue now in the form of a collateral challenge to his final conviction.

[¶39.]    In his supplemental brief, Ceplecha argues res judicata should not apply because it was "not substantially raised before the trial court . . . , nor on direct appeal." In his view, Murphy should have developed Ceplecha's testimony

more by asking him specific questions "about how [Ceplecha] had to resort to self-defense[.]"

[¶40.]    Although it is true that the application of res judicata requires, among other things, "a full and fair opportunity to litigate the issues in the prior adjudication[,]" *Healy Ranch, Inc. v. Healy*, 2022 S.D. 43, ¶ 42, 978 N.W.2d 786, 799 (citation omitted), the opportunity that is necessary must be viewed in the context of the proceeding at issue. When the self-defense claim was first presented to the circuit court, it was offered as a reason to allow Ceplecha to withdraw his guilty plea to first-degree manslaughter. Ceplecha did not need to prove that he had, in fact, acted in self-defense or even that he was likely to succeed at a trial. Instead, Ceplecha needed only to satisfy the relatively modest standard that there was a fair and just, non-frivolous reason to allow him to withdraw the plea.

[¶41.]    Beyond this, there is no reason to think that Murphy's questions were insufficient to elicit the details of Ceplecha's self-defense theory. Murphy asked Ceplecha in multiple ways why he thought he was not guilty of manslaughter. Our review of the hearing transcript from Ceplecha's motion to withdraw the guilty plea leads us to conclude that it was Ceplecha, not Murphy, who ultimately failed to support the belated self-defense theory with specific details, either in the responses Ceplecha provided, or in his prepared remarks that he read during his direct examination. Perhaps more importantly, Ceplecha did not state that he pled guilty because he was uncertain that he had a self-defense claim. Rather, Ceplecha testified that he pled guilty "so that [he and his son] could be together and possibly get parole."

[¶42.]    Finally, Ceplecha argues for the first time in his supplemental brief that the circuit court erred when it denied his motion for new counsel. We think that the argument is not cognizable for several reasons, not the least of which is the fact that Celplecha did not make this argument in his direct appeal. But he could have, and, in fact, Rangler did make that argument in his own appeal. *See supra* at n.6. Murphy did not represent Ceplecha on direct appeal—two other attorneys did. Under the circumstances, any claim relating to the circuit court's decision to deny Ceplecha's motion for new counsel is barred under the claim preclusion feature of res judicata.

[¶43.]    Under the circumstances, we conclude that Ceplecha cannot relitigate the efficacy of a self-defense claim in this habeas corpus proceeding. The issue was fully litigated before the circuit court and again on direct appeal. The habeas court correctly applied res judicata to determine Ceplecha could not, in any event, demonstrate prejudice under the *Strickland* test. We affirm.

[¶44.]    JENSEN, Chief Justice, and KERN and MYREN, Justices, concur.

[¶45.]    DEVANEY, Justice, who deemed herself disqualified, did not participate.