#28153-a-MES
**2019 S.D. 65**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

BRILEY W. PIPER,                                Petitioner and Appellant,

 v.

DARRIN YOUNG, Warden of
the South Dakota State Penitentiary,            Respondent and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE RANDALL L. MACY
Retired Judge
* * * *

RYAN KOLBECK
Sioux Falls, South Dakota                       Attorney for petitioner and
                                                appellant.


MARTY J. JACKLEY
Attorney General

PAUL S. SWEDLUND
MATTHEW W. TEMPLAR
Assistant Attorneys General
Pierre, South Dakota                            Attorneys for respondent
                                                and appellee.

* * * *

ARGUED OCTOBER 1, 2018
OPINION FILED **12/11/19**

#28153

SALTER, Justice

[¶1.] Briley Piper pled guilty to five separate crimes, including first-degree felony murder, and was originally sentenced to death following a court sentencing. We affirmed his sentence on direct review, but later granted habeas relief, vacated the death sentence, and remanded the case for resentencing by a jury. The jury also sentenced Piper to death, which we affirmed in his second direct appeal. Piper now appeals the circuit court's denial of his second application for writ of habeas corpus, claiming his original guilty pleas were not made voluntarily and intelligently. Piper also claims that the resentencing court abused its discretion when it denied his motion to introduce evidence of what he alleged were the State's inconsistent previous arguments. Finally, Piper argues he received ineffective assistance of counsel at his initial change of plea hearing and at his jury resentencing. We affirm.

## Background

[¶2.] In March of 2000, Chester Allan Poage was brutally beaten and killed at a remote location in Lawrence County. His body was found approximately one month later, and law enforcement officers quickly identified Briley Piper, Elijah Page, and Darrell Hoadley as suspects in the murder and a related burglary and theft at Poage's home. The State charged the three with first-degree murder, kidnapping, first-degree robbery, first-degree burglary, and grand theft. The State also filed a notice of its intent to seek the death penalty for each of the three co-defendants. A more complete factual summation is set forth in *State v. Piper* (*Piper

-1-

#28153

*I*), 2006 S.D. 1, 709 N.W.2d 783, but here we confine ourselves to the procedural progression of this case through its successive stages of litigation.

### *The Guilty Pleas and Court Sentencing*

[¶3.]     On January 3, 2001, Piper pled guilty to all five principal charges.[1] His guilty pleas came shortly before his capital murder trial was scheduled to begin and after the circuit court[2] denied, in part, his motions to suppress statements to law enforcement officers and to a former jail cellmate.  The pleas were not prompted by a plea agreement and were unanticipated by the prosecutor and the circu court, who were expecting to discuss additional pretrial motions at the hearing.

[¶4.]     During what became his change of plea hearing, Piper's attorneys opined that the text of SDCL 23A-27A-2 and SDCL 23A-27A-6 seemed to contemplate that the court would sentence the defendant in a capital case following a guilty plea.  The issue was a novel one, though, and the court called a recess to consider it further.  At the heart of the inquiry, and a recurring theme in all of Piper's post-plea litigation, was whether the same forum (court or jury) had to decide both the guilt and sentencing phases, or whether a defendant in a capital case could have alternate forums at each phase.[3]  When the January 3 hearing

---

1.    The indictment alleged first-degree murder under premeditated murder and felony murder theories.  Piper pled guilty to the latter.

2.    The Honorable Warren G. Johnson, now a retired circuit court judge, acted as the plea-taking court and imposed the initial sentence.

3.    South Dakota's capital punishment procedure provides for a bifurcated proceeding.  *See* SDCL ch. 23A-27A.  The initial phase focuses upon determining a defendant's guilt, as would be the case in any criminal action. If the defendant is found guilty, either after a jury trial or pursuant to a plea,

(continued . . .)

resumed, the parties and the court did not discuss the topic further, but the record supports the inference that the court, counsel, and Piper all understood that Piper would continue with his stated intention of pleading guilty and asking the court to conduct his sentencing.

[¶5.]     The court advised Piper of his constitutional rights, including the separate right to have his sentence determined by a jury. The court explained the effect of Piper's waiver of a jury trial and the statutory maximum penalty for each offense, telling Piper specifically that the punishment for the murder conviction could include death by lethal injection. Piper acknowledged the risks of his pleas and waived his rights to a jury trial,[4] telling the court that he was pleading guilty to take responsibility for his conduct. After canvassing Piper further, the court determined that the pleas were voluntary and intelligent and accepted them.

[¶6.]     After three days of evidence, the court imposed a sentence of death for the first-degree murder conviction, life imprisonment for the kidnapping conviction, and consecutive maximum sentences for the robbery, burglary, and grand theft convictions. As to the murder sentence, the court found the existence of three statutory aggravating factors, which authorized the capital sentence. *See* SDCL 23A-27A-6. In this regard, the court specifically found that Piper had killed Poage

_____

(. . . continued)
     eligibility for the death penalty is determined in a second, sentencing phase. If the question of punishment is tried to a jury, and the jury finds the existence of at least one statutory aggravating factor, it may recommend a sentence of death. SDCL 23A-27A-4.

4.     Piper also waived his right against self-incrimination and his right to confront witnesses against him. *See Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712, 23 L. Ed. 2d 274 (1969).

"for the purpose of receiving money or any other thing of monetary value[,]" that the killing "was outrageously or wantonly vile, horrible, or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim[,]" and that the killing "was committed for the purpose of avoiding, interfering with, or preventing a lawful arrest or custody in a place of lawful confinement, of the defendant or another[.]"[5] *See* SDCL 23A-27A-1(3), (6), (9).

***Piper I***

[¶7.] In the decision now known as *Piper I*, we affirmed Piper's death sentence. 2006 S.D. 1, 709 N.W.2d 783. Among the arguments we considered was Piper's claim that SDCL 23A-27A-2[6] and SDCL 23A-27A-6[7] were unconstitutional because they deprived him of his right to have a jury determine his sentence in

---

5. Page also pled guilty to all five charges. He was also sentenced to death by the court, and was later executed. Hoadley pled not guilty and requested a jury trial. A jury found Hoadley guilty of the same offenses, but could not reach a unanimous decision on the death penalty. Therefore, Hoadley was sentenced to life imprisonment without parole. *See* SDCL 23A-27A-4 ("If a sentence of death is not recommended by the jury, the court shall sentence the defendant to life imprisonment.").

6. SDCL 23A-27A-2 provides, in part:

> [i]n all cases in which the death penalty may be imposed and which are tried by a jury, upon a return of a verdict of guilty by the jury, the court shall resume the trial and conduct a presentence hearing before the jury.

7. SDCL 23A-27A-6 provides:

> [i]n nonjury cases the judge shall, after conducting the presentence hearing as provided in § 23A-27A-2, designate, in writing, the aggravating circumstance or circumstances, if any, which he found beyond a reasonable doubt. Unless at least one of the statutory aggravating circumstances enumerated in § 23A-27A-1 is so found, the death penalty shall not be imposed.

contravention of *Ring v. Arizona,* 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002). In *Ring*, the United States Supreme Court held that Arizona's death penalty statutes violated a defendant's Sixth Amendment right to a jury trial because they required a judge, instead of a jury, to determine the existence of statutory aggravating factors following a guilty plea in a capital case. 536 U.S. at 589, 122 S. Ct. at 2432.

[¶8.] Despite this argument on appeal, Piper expressed no more than a theoretical interest in having a jury determine his sentence. *Piper I*, 2006 S.D. 1, ¶ 66, 709 N.W.2d at 808-09. He had not made a *Ring* argument to the circuit court and was advised of his right to a jury for sentencing at his change of plea hearing. We affirmed Piper's sentence, holding Piper had, in fact, requested sentencing by the court and waived his right to jury sentencing:

> We will not, without any supporting authority, sanction the remarkable proposition that a defendant may waive the right to a jury at sentencing, allow the trial court to impose a sentence in accordance with the defendant's wishes, and then, to avoid an unfavorable sentence, invalidate the waiver on appeal by arguing a deprivation of the constitutional right that the defendant *did not want to exercise.*

*Id.* ¶ 68, 709 N.W.2d at 810.

[¶9.] Nevertheless, we also analyzed the merits of Piper's *Ring* claim. Construing the text of SDCL 23A-27A-2 and SDCL 23A-27A-6, we held that our capital punishment statutes only regulate the sentencing *procedure* and, unlike the statutes at issue in *Ring*, "do not purport to regulate the *right* to jury sentencing in capital cases." *Id.* ¶ 51, 709 N.W.2d at 804. The right to have a jury determine whether aggravating factors exist during the sentencing phase remains available to

all defendants in capital cases by virtue of separate constitutional and statutory guarantees. *Id.* ¶¶ 52-56, 709 N.W.2d at 804-06.

[¶10.] Although Piper had argued that our statutes required a court to conduct the sentencing in a capital case involving a guilty plea, he did not make the alternative argument—that in the absence of a *Ring* deficiency, our statutes unconstitutionally required a capital defendant to plead guilty in order to be sentenced by a judge.

***Piper II***

[¶11.] Piper's first petition seeking a writ of habeas corpus was solely directed at his death sentence. In an entirely new claim, Piper alleged the plea-taking court misstated the unanimity requirement related to a jury's sentencing determination in a capital case. The plea-taking court had, in fact, incorrectly advised Piper that the jury must unanimously agree on any sentence. Piper claimed the court's advisement suggested that the jury must unanimously agree to recommend life in prison, overlooking the fact that one juror's decision to not impose the death penalty would result in a life sentence. Piper claimed the court's misstatement prevented a voluntary and intelligent waiver of his right to have a jury sentencing, but he made no argument about any potential impact on the guilty pleas, themselves.

[¶12.] Piper was unsuccessful before the initial habeas court.[8] We reviewed the merits of the claim in *Piper v. Weber (Piper II),* identified the erroneous unanimity advisement, and granted relief, but not the relief Piper had sought. 2009

---

8. The Honorable John Bastian, Circuit Court Judge, now retired.

S.D. 66, ¶¶ 20-21, 771 N.W.2d 352, 360. Piper argued that we should correct the plea-taking court's error by converting his sentence to life in prison without the possibility of parole. *Id.* We declined, however, and remanded the case for resentencing by a jury. *Id.*

### Piper's First Motion to Withdraw his Pleas and Piper III

[¶13.] Following our remittal in *Piper II*, Piper moved for the first time to withdraw his guilty pleas pursuant to SDCL 23A-27-11, arguing among other things that the plea-taking court failed to ensure that Piper understood he did not have to plead guilty to obtain a court sentencing. The circuit court[9] denied the motion on its merits, finding no manifest injustice. *See* SDCL 23A-27-11 (stating that a motion to withdraw a guilty plea can be made after sentencing "to correct manifest injustice").

[¶14.] The case proceeded to a jury resentencing and concluded with the jury's unanimous recommendation to impose a sentence of death. The jury found the existence of the same three aggravating factors the plea-taking court had previously found. SDCL 23A-27A-1(3), (6), (9).

[¶15.] Piper appealed the jury's sentence, and in *State v. Piper* (*Piper III*), we held that Piper's 2011 death sentence was lawfully imposed by the jury. 2014 S.D. 2, ¶ 44, 842 N.W.2d 338, 351. We also affirmed the denial of Piper's motion to withdraw his guilty pleas made after *Piper II*, but not on the merits. *Id.* ¶ 13, 842 N.W.2d at 344. Instead, we held that the circuit court lacked jurisdiction to

---

9. The Honorable Jerome A. Eckrich, III, Circuit Court Judge, now retired.

consider Piper's motion to withdraw his guilty pleas because the *Piper II* limited remand only authorized the circuit court to conduct a jury resentencing. *Id.*

### Piper's Second Motion to Withdraw and the Current Habeas Action

[¶16.] In 2015, Piper filed a second habeas petition that is now at issue in this appeal. Navigating the holdings of *Piper I* and *Piper II*, the current petition alleges his 2001 guilty pleas were not voluntary and intelligent. Drawing on the plea-taking court's misstatement of the unanimity requirement identified in *Piper II*, Piper now argues that the error was more serious than he previously claimed because he waived his right to a jury trial, believing it was the only way to obtain sentencing by the court. The argument identifies what Piper believes is a lingering technical deficiency in the plea advisory, but he does not allege he wants a jury to determine the issue of guilt. Nor does he claim he is actually innocent.

[¶17.] Also contained in Piper's second petition is the related claim that his original trial attorneys were ineffective when they advised him of his rights related to a jury trial. The petition alleges other ineffective assistance of counsel claims regarding his resentencing counsels' performance, including arguments that counsel: (1) failed to effectively conduct voir dire; (2) did not thoroughly investigate the State's witnesses; (3) failed to appeal the court's denial of a mistrial after it allowed testimony regarding penitentiary privileges; and (4) failed to either object or appeal issues regarding the cross-examination of a defense witness.

[¶18.]        During the pendency of this second habeas action in the circuit court,[10] Piper again moved to withdraw his guilty plea, seeking a merits determination of whether his guilty pleas were valid.  The circuit court denied his motion, stating it lacked jurisdiction to consider the motion because the request remained outside of the limited remand from *Piper II*.  Piper appealed the court's denial immediately, but we dismissed the appeal in an unpublished order, concluding that we lacked appellate jurisdiction.  *See State v. Kaufman*, 2016 S.D. 24, ¶ 12, 877 N.W.2d 590, 592 (holding that the Legislature has not provided a means to review the denial of motions to withdraw guilty pleas made 30 days after entry of judgment).

[¶19.]        The litigation involving the second habeas petition remained pending before the circuit court,[11] which ultimately denied relief.  The court reviewed the merits of the second motion to withdraw the pleas and determined that Piper's guilty pleas were voluntary and intelligent.  The court noted that the claim could be barred under principles of claim preclusion because Piper had not challenged his guilty pleas until the remand proceedings following *Piper II*.  The circuit court also determined that Piper's ineffective assistance of counsel claims were not sustainable because he had not demonstrated that his counsels' representation fell below an objective standard of reasonableness or that any error subjected him to prejudice.

---

10.    Judge Eckrich also determined Piper's second motion to withdraw his guilty pleas.

11.    The Honorable Randall Macy, Circuit Court Judge, now retired.

[¶20.]     Piper appeals the circuit court's denial of his second writ of habeas corpus raising several issues, which we restate as follows:

1.     Whether Piper's challenge to his guilty pleas presents a reviewable and meritorious habeas claim.

2.     Whether Piper's claim that the resentencing court abused its discretion when it denied his motion to introduce evidence of the State's inconsistent arguments presents a reviewable and meritorious habeas claim.

3.     Whether Piper's resentencing counsel provided ineffective assistance in violation of his Sixth and Fourteenth Amendment rights.

## Analysis

### *The Reviewability of Piper's Challenge to his Guilty Pleas*

[¶21.]     "Our review of [a] habeas corpus proceeding[ ] is limited because it 'is a collateral attack on a final judgment.'" *Miller v. Young*, 2018 S.D. 33, ¶ 12, 911 N.W.2d 644, 648 (quoting *Vanden Hoek v. Weber*, 2006 S.D. 102, ¶ 8, 724 N.W.2d 858, 861).  It is not, as we have time and again held, a substitute for appeal.[12]  *See, e.g., Wright v. Young*, 2019 S.D. 22, ¶ 10, 927 N.W.2d 116, 119 (explaining that

12.     While this often-repeated statement seems unremarkable in contemporary times, it marks an important distinction between direct appeals and habeas review that did not always exist.  The right to appeal is often not conferred by constitution, and historically, people convicted of criminal offenses did not have the right to seek direct review until the enactment of statutes that authorized direct appeals.  As a result, the United States Supreme Court has reflected on its own early practice of using the ancient writ of habeas corpus to find "jurisdiction" and correct trial errors.  *See United States v. Cotton*, 535 U.S. 625, 630, 122 S. Ct. 1781, 1784-85, 152 L. Ed. 2d 860 (2002) (explaining that the "expansive notion of jurisdiction" can be traced to the time when defendants could not directly appeal their convictions).  The advent of statutes providing for a right of appeal has eliminated the need to use habeas corpus proceedings to correct trial errors that could have been raised on direct appeal.

review of a habeas action is more limited than for a direct appeal because it is a "collateral attack upon a final judgment"). Courts may use the habeas corpus procedure in the narrow realm of post-conviction litigation to determine: "(1) whether the court has jurisdiction of the crime and the person of the defendant; (2) whether the sentence was authorized by law; and (3) in certain cases whether an incarcerated defendant has been deprived of basic constitutional rights." *Piper II*, 2009 S.D. 66, ¶ 7, 771 N.W.2d at 355.

[¶22.] However, even for claims alleging the deprivation of constitutional rights, we have traditionally applied the doctrine of res judicata to determine whether a post-conviction claim is cognizable in a habeas corpus action or whether it has been defaulted because it was not made in an earlier proceeding. *See, e.g.*, *Ramos v. Weber*, 2000 S.D. 111, ¶ 8, 616 N.W.2d 88, 91. Res judicata involves two distinct concepts—issue preclusion and claim preclusion:

> Issue preclusion refers to the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided . . . . Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit[.]

*Am. Family Ins. Grp. v. Robnik*, 2010 S.D. 69, ¶ 15, 787 N.W.2d 768, 774 (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1, 104 S. Ct. 892, 894 n.1, 79 L. Ed. 2d 56 (1984)).

[¶23.] In *Ramos*, for example, we applied res judicata principles to hold that a petitioner's due process challenge to his sentence was not cognizable in a habeas proceeding. 2000 S.D. 111, ¶ 8, 616 N.W.2d at 91. In his direct appeal, the petitioner had unsuccessfully argued that his sentence violated the Eighth

Amendment's prohibition on cruel and unusual sentences. *Id.* ¶ 2, 616 N.W.2d at 90. In an ensuing habeas action, the petitioner again challenged his sentence, but this time claimed it violated the due process provisions of the Fourteenth Amendment. *Id.* ¶ 3, 616 N.W.2d at 90. Citing the petitioner's plain opportunity to litigate the due process claim earlier and the need for finality, we declined to review the new claim:

> The doctrine of res judicata disallows reconsidering an issue that was actually litigated *or that could have been raised and decided in a prior action.* The purpose behind the doctrine is to protect parties from being subjected twice to the same cause of action, since public policy is best served when litigation has a finality . . . . This due process challenge could have been raised in the direct appeal along with the Eighth Amendment challenge. Under the doctrine of res judicata, we will not review successive attacks on a sentence, especially when all the grounds could have been raised in the earlier proceeding.

*Id.* ¶ 8, 616 N.W.2d at 91-92 (internal quotations and citations omitted) (emphasis added); *see also LeGrand v. Weber*, 2014 S.D. 71, ¶ 28, 855 N.W.2d 121, 129 (applying preclusion principles to petitioner's request to withdraw his guilty plea in his habeas action after the Court had already decided the issue on direct appeal).

[¶24.] We applied the same preclusion rationale in *Miller v. State*, 338 N.W.2d 673 (S.D. 1983). In *Miller*, the petitioner argued, among other things, that the court's inquiry regarding the defendant's motion to remove the judge violated his due process rights. *Id.* at 675. Because the petitioner did not raise the issue earlier, we determined that the issue was not cognizable in a habeas action, citing "[t]he general rule . . . that a petitioner who takes a direct appeal cannot thereafter raise in a post-conviction proceeding any matter which he knew at the time of the direct appeal, but did not raise." *Id.*

[¶25.] Here, Piper's due process claim challenging his guilty pleas is twice procedurally defaulted under these same preclusion principles. He failed to raise the issue in his direct appeal in *Piper I*, and he again overlooked the claim during his initial habeas case in *Piper II*.

[¶26.] The due process argument Piper now seeks to advance bears a close and conspicuous relationship to his principal argument in *Piper I*, challenging the constitutionality of SDCL 23A-27A-2 and SDCL 23A-27A-6. 2006 S.D. 1, ¶¶ 48-49, 709 N.W.2d at 803-04. Piper's earlier argument that these statutes violated *Ring v. Arizona* and a capital defendant's Sixth Amendment right to have a jury determine his sentence necessarily implicated South Dakota's procedure for guilty pleas and sentencing in capital cases. *Id.*

[¶27.] Indeed, Piper's current claim is part and parcel of his original argument because it presents an alternative constitutional challenge to the same sentencing procedure. A lack of success on the *Ring* claim would prompt the inverted, but related, argument he now makes—that a defendant requesting court sentencing in a capital case must waive his jury trial right on the issue of guilt, ostensibly in violation of the Fourteenth Amendment's Due Process Clause.

[¶28.] Viewed in this way, the case presents essentially the same circumstances we confronted in *Ramos*, where we held that claim preclusion prevented a habeas petitioner from challenging his sentence on due process grounds after an unsuccessful Eighth Amendment challenge on direct appeal. 2000 S.D. 111, ¶ 8, 616 N.W.2d at 91. In this case, Piper seeks to do the same thing by

transposing his original *Ring* claim from *Piper I* and rebranding it as a due process claim.

[¶29.]     Similar res judicata considerations relating to *Piper II* also preclude Piper's current challenge to his guilty pleas. In *Piper II*, we accepted the argument that the plea-taking court incorrectly advised Piper that unanimity was required for a jury to decide against the death sentence and in favor of life imprisonment. 2009 S.D. 66, ¶ 17, 771 N.W.2d at 358-59. Therefore, we held that the plea record did not demonstrate a voluntary and intelligent waiver of the right to a jury sentencing—a holding Piper now attempts to extend to argue that his waiver to a jury trial on the question of guilt was similarly affected because he believed at the time of his guilty plea that the guilt and sentencing forums had to be the same.

[¶30.]     However, Piper did not make this argument in *Piper II*. Instead, he sought to prevail on his request to convert his death sentence to a sentence of life in prison without the possibility of parole. *Id.* ¶ 20, 771 N.W.2d at 360. Piper's opportunity to challenge his guilty pleas was surely presented in *Piper II*, and if he intended to pursue it at all, he should have advanced the argument then rather than through the piecemeal method he now suggests. *See Gregory v. Class*, 1998 S.D. 106, ¶ 25, 584 N.W.2d 873, 880 (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)) ("The existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some *objective factor external to the defense* impeded counsel's efforts to comply with the State's procedural rule.")

[¶31.]  In his submissions to the circuit court and on appeal, Piper offers the view that he could choose, unilaterally and for strategic reasons, when to advance his challenge to the guilty pleas. As support he cites the provisions of SDCL 23A-27-11, which allow an individual to move to withdraw an earlier guilty plea. Because the text of the rule imposes no time limits upon post-sentencing motions to withdraw guilty pleas to correct "manifest injustice," Piper argues he could, in his discretion, determine when to make his motion. SDCL 23A-27-11. The claim is not supportable, however, because it views the rule preeminently and overlooks other governing legal principles.

[¶32.]  The plain text of SDCL 23A-27-11 does not purport to displace other limitations that might restrict the availability of motions to withdraw guilty pleas, such as those imposed by basic rules of claim preclusion and procedural default in post-conviction cases. Nor do our cases support the view that SDCL 23A-27-11 can be viewed in isolation as an unrestricted right to challenge a guilty plea at any point in the indeterminate future. To the contrary, we held in *LeGrand* that a habeas petitioner's effort to withdraw his guilty plea was barred under res judicata principles. 2014 S.D. 71, ¶ 31, 855 N.W.2d at 130; s*ee also State v. Goodwin*, 2004 S.D. 75, ¶ 4, 681 N.W.2d 847, 849 (citation omitted) (recognizing a strict standard for withdrawing guilty pleas after sentencing is necessary "to prevent a defendant from testing the weight of potential punishment, and then withdrawing the plea if he finds the sentence unexpectedly severe[]").

[¶33.] Piper's argument that preclusion principles should yield to a broad general concept of fundamental fairness is also not sustainable.[13] Simply put, Piper has not demonstrated what is fundamentally unfair with the application of res judicata here, given the opportunities he has had to litigate the claims he now asserts. Instead, the record here convinces us that Piper never sought to invoke his right to a jury trial on the issue of guilt until after our remand for jury sentencing and after we affirmed the imposition of his death sentence. He has not articulated a reason, or cause, for his delay other than his own strategy.

[¶34.] We recognize the exceptional nature of a death sentence and the corresponding level of scrutiny that courts must apply throughout the trial, direct review, and post-conviction stages. However, the need for finality and the effectual administration of the law exists in capital and non-capital cases alike. "Collateral challenges to the sentence in a capital case, like collateral challenges to the sentence in a noncapital case, delay the enforcement of the judgment at issue and decrease the possibility that 'there will at some point be the certainty that comes with an end to litigation.'" *Teague v. Lane*, 489 U.S. 288, 314 n.2, 109 S. Ct. 1060, 1077 n.2, 103 L. Ed. 2d 334 (1989) (quoting *Sanders v. United States*, 373 U.S. 1, 25,

---

13. As support for his argument to avoid the preclusive effect of res judicata, Piper cites *Haase v. Weber*, 2005 S.D. 23, 693 N.W.2d 668. In *Haase*, a narrow majority of this Court vacated the circuit court's order dismissing the petitioner's successive habeas action and remanded the case with instructions to "consider any and all . . . asserted grounds for habeas relief on their merits[]" because "various procedural barriers" had prevented review previously. 2005 S.D. 23, ¶ 5, 693 N.W.2d at 669-70. This rationale departs from our case law applying issue and claim preclusion in post-conviction collateral challenges. Regardless, though, *Haase* is inapplicable to Piper's case because, without question, he has not been denied previous post-conviction review.

83 S. Ct. 1068, 1082, 10 L. Ed. 2d 148 (1963) (Harlan, J., dissenting)). The issue is particularly apparent where, as here, the petitioner seeks to recalibrate successive post-conviction challenges with untimely arguments arising from an original uncontested guilty plea and without alleging actual innocence:

> Every inroad on the concept of finality undermines confidence in the integrity of our procedures . . . . The impact is greatest when new grounds for setting aside guilty pleas are approved because the vast majority of criminal convictions result from such pleas. Moreover, the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea.

*United States v. Timmreck*, 441 U.S. 780, 784, 99 S. Ct. 2085, 2087-88, 60 L. Ed. 2d 634 (1979) (citation omitted).

### The Merits of Piper's Voluntary and Intelligent Guilty Plea Waiver Claim

[¶35.] Even if we were inclined to review the merits of Piper's claim that he did not voluntarily and intelligently waive his right to a jury trial on guilt, the claim is not meritorious. An individual's challenge to his earlier guilty plea presents a compelling paradox and prompts a close examination of all the circumstances that existed at the time of the plea to determine whether it was made voluntarily and intelligently. *See Goodwin*, 2004 S.D. 75, ¶ 11, 681 N.W.2d at 852.

[¶36.] Though closely related, the terms voluntary and intelligent reflect perceptible differences that should not be conflated when examining the sufficiency of a defendant's decision to waive his right to a jury trial. *See State v. Nikolaev*, 2000 S.D. 142, ¶ 10, 619 N.W.2d 244, 247 ("[A] voluntary [plea] . . . is by definition not the result of threats, force or promises made apart from the plea agreement, or any other form of coercion."); *see also In re Estate of Smid*, 2008 S.D. 82, ¶¶ 14-17,

756 N.W.2d 1, 7 (accepting the argument that a voluntary waiver of spousal inheritance rights does not mean knowing but simply means "done by design . . . intentional[ly] . . . or not accidental[ly]").

[¶37.] In *Brady v. United States*, the United States Supreme Court described "[t]he standard as to the voluntariness of guilty pleas" in the following terms:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

397 U.S. 742, 755, 90 S. Ct. 1463, 1472, 25 L. Ed. 2d 747 (1970) (citation omitted).

[¶38.] Even if we assume, without deciding, that Piper would not have pled guilty and waived his right to a jury trial except for the reason that he wanted to have a court sentencing, "this assumption merely identifies . . . a 'but-for' cause of his plea [and] . . . does not necessarily prove that the plea was coerced and invalid as an involuntary act." *Id.* at 750, 90 S. Ct. at 1470. Here, the only inference we can draw from the record is that Piper's plea was voluntary, as the plea-taking court determined it to be.

[¶39.] Piper told the plea-taking court that he wanted to plead guilty to accept responsibility for his actions. The testimony of his trial attorneys further establishes that Piper's initial strategy was purposeful, not accidental. At least one of Piper's attorneys described the evidence against him as overwhelming and expressed certainty that Piper would be convicted by a jury—conclusions Piper has not challenged. Confronted with these circumstances, Piper intentionally waived

his right to a jury trial and accepted responsibility as part of a strategy to develop a mitigation case and avoid sentencing before a jury in favor of sentencing before a seasoned trial judge. Piper pled guilty without prompting and without a plea agreement. There is no evidence of any threats, coercion, or broken promises. His pleas were, therefore, voluntary.

[¶40.] Furthermore, "[t]he rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision." *Brady*, 397 U.S. at 757, 90 S. Ct at 1473. Often, as in this case, "the decision to plead guilty is heavily influenced . . . by the apparent likelihood of securing leniency should a guilty plea be offered and accepted." *Id.* at 756, 90 S. Ct. at 1473. Undertaking such a decision may present "questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time." *Id.* at 756-57, 90 S. Ct. at 1473. Courts considering whether a defendant intelligently waived his right to a jury trial cannot revise legal history:

> [A] voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise. A plea of guilty triggered by the expectations of a competently counseled defendant that the State will have a strong case against him is not subject to later attack because the defendant's lawyer correctly advised him with respect to the then existing law as to possible penalties but later pronouncements of the courts, as in this case, hold [differently].

*Id.* at 757, 90 S. Ct. at 1473.

[¶41.]     Here, Piper's claim that his plea was not intelligent because his trial attorneys advised him that the guilt and sentencing forums must be the same is not supportable. Though Piper accurately describes the advice he received, the incorrectness of the advice was not known until our decision in *Piper I*, when we held that our capital punishment statutes do not require a judge to conduct the sentencing phase of a capital case following a guilty plea. 2006 S.D. 1, ¶ 48, 709 N.W.2d at 803. Prior to that time, the question was an open one, and even a former habeas attorney for Piper acknowledged that Piper's original trial lawyers had offered competent advice based upon a supportable reading of SDCL 23A-27A-2 and SDCL 23A-27A-6.[14]

[¶42.]     This case bears strong similarities to *Brady*, where the petitioner argued his 1959 guilty plea to a federal kidnapping charge was not voluntary and intelligent based upon the United States Supreme Court's decision nine years later in *United States v. Jackson*, 390 U.S. 570, 88 S. Ct. 1209, 20 L. Ed. 2d 138 (1968). The *Jackson* decision invalidated a part of the federal kidnapping statute that allowed the death penalty only upon a jury's recommendation, "thereby ma[king] the risk of death the price of a jury trial." *Brady*, 397 U.S. at 746, 90 S. Ct. at 1467 (discussing *Jackson*). The petitioner in *Brady* challenged his plea by alleging the prospect of a death sentence impacted his decision to plead guilty. *Id.* at 746, 90 S. Ct. at 1468. The United States Supreme Court denied post-conviction relief because

---

14.    This uncertainty in the state of the law represents a marked and consequential distinction with the plea-taking court's incorrect statement of the unanimity requirement we considered in *Piper II*, where the error was patent under existing law and immediately apparent from the record.

the petitioner's guilty plea was intentional, not coerced,[15] and based upon a supportable view of the law as it existed at the time of his plea. *Id.* at 750, 90 S. Ct. at 1470.

[¶43.] Applying these principles here, we are convinced that Piper's pleas were intelligent. His argument to the contrary overlooks essential historical facts associated with his pleas, including his reasons for pleading guilty and the competent advice he received concerning the then-unsettled question of whether the guilt and sentencing forums had to be the same. Piper's constitutional argument also incorrectly forecloses the possibility of a voluntary and intelligent waiver if the plea-taking court's advisory failed to anticipate our holding in *Piper I* or the resulting possible variations of different forums for guilt and sentencing. These facts, however, "do[] not impugn the truth or reliability of his plea[s]."[16] *Id.* at 757, 90 S. Ct. at 1473-74. When we examine the record from the change of plea hearing objectively, it "affirmatively show[s] the plea[s] w[ere] voluntary, that the defendant understood the consequences of pleading guilty, and that the defendant explicitly

---

15. In *Brady* and in *Jackson*, itself, the United States Supreme Court concluded that the procedure that allowed for a sentence of death only after a jury found guilt was not "inherently coercive of guilty pleas: 'the fact that the Federal Kidnapping Act tends to discourage defendants from insisting upon their innocence and demanding trial by jury hardly implies that every defendant who enters a guilty plea to a charge under the Act does so involuntarily.'" *Brady*, 397 U.S. at 746-47, 90 S. Ct. at 1468 (quoting *Jackson*, 390 U.S. at 583, 88 S. Ct. at 1217).

16. As our analysis in this case suggests, we did not grant relief in *Piper II* based upon the fact that Piper thought the guilt and sentencing forums in capital cases must be the same. Rather, we remanded the case for jury sentencing in *Piper II* to address an obvious deficiency in the plea-taking court's explanation of the unanimity requirement.

waived the constitutional right against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers." *Monette v. Weber*, 2009 S.D. 77, ¶ 10, 771 N.W.2d 920, 925 (citation and emphasis omitted).

### *Inconsistent Closing Argument Claim*

[¶44.]     Piper claims that the resentencing court should have allowed him to introduce evidence that the prosecutor previously made inconsistent arguments about the leadership roles of Piper and Page during Poage's kidnapping and murder. However, this argument cannot serve as a basis for habeas relief for several reasons.

[¶45.]     First, Piper did not make what is essentially an evidentiary argument in *Piper III*, which was his direct appeal from the jury resentencing. He certainly could have, though, and based upon our analysis above, the claim is precluded, or defaulted, under well-established res judicata rules. *See Ramos*, 2000 S.D. 111, ¶ 8, 616 N.W.2d at 91.

[¶46.]     Second, the factual basis for the argument is unsupported, and even if we were to consider the merits of the claim, we cannot accept that the prosecutor's arguments were, in fact, inconsistent. As our opinions in *Piper I* and *State v. Page*, 2006 S.D. 2, 709 N.W.2d 739, illustrate, the events associated with Poage's killing involved several different and distinct acts of cruelty and violence that occurred over the course of several hours and at different locations. At various times, both Piper and Page exhibited leadership roles, and each had significant individual culpability in torturing, beating, and killing Poage.

[¶47.] Finally, Piper's inconsistent argument claim, itself, has a tenuous connection to any supporting legal authority. Though he contends the prosecutor's inconsistent arguments should have been introduced at his resentencing as mitigating evidence, we see the issue differently. The prosecutor's arguments were offered in the context of two adversarial proceedings, and there is no claim that the prosecutor inaccurately described the relative factual roles of the three defendants. In any event, the prosecutor's argument at the resentencing was not, itself, evidence and did not prevent Piper from presenting a different view of his relative culpability to the jury.

### Piper's Ineffective Assistance of Counsel Claims

[¶48.] We review a circuit court's determination of Sixth Amendment ineffective assistance of counsel claims as mixed questions for which we review the court's determination of a constitutional violation de novo and its findings of fact for clear error. *Wright,* 2019 S.D. 22, ¶ 10, 927 N.W.2d at 119. A petitioner's ineffective assistance claim is determined under the familiar two-pronged standard set out in *Strickland v. Washington*:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984)).

[¶49.]     In this case, we face the uncommon situation where we review ineffective assistance claims alleged to arise from Piper's original guilty pleas as well as claims from his jury resentencing. For the claims relating to the advice of his original trial counsel, Piper has a heightened burden to establish that his attorneys committed "gross error . . . in recommending that [he] plead guilty." *McDonough v. Weber*, 2015 S.D. 1, ¶ 16, 859 N.W.2d 26, 34 (quoting *Coon v. Weber*, 2002 S.D. 48, ¶ 12, 644 N.W.2d 638, 643).

[¶50.]     For ineffective assistance claims arising from either a guilty plea or a trial, "[a] habeas applicant must rebut the 'strong presumption' that counsel was competent." *Jenner v. Dooley*, 1999 S.D. 20, ¶ 16, 590 N.W.2d 463, 470 (citing *Kimmelman v. Morrison*, 477 U.S. 365, 381, 106 S. Ct. 2574, 2586, 91 L. Ed. 2d 305 (1986)). Our function is not to "second guess the decisions of experienced trial attorneys regarding matters of trial tactics unless the record shows that counsel failed to investigate and consider possible defenses . . . ." *Randall v. Weber*, 2002 S.D. 149, ¶ 7, 655 N.W.2d 92, 96 (quoting *Sprik v. Class*, 1997 S.D. 134, ¶ 24, 572 N.W.2d 824, 829). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.

[¶51.]     The second prong of the *Strickland* test in guilty plea cases begins with considering the likelihood that the defendant would not have pled guilty in the absence of counsel's allegedly deficient advice. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985). "[I]n order to satisfy the "prejudice"

requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* The complete assessment of prejudice, including for cases involving trials, will turn on whether, in the absence of the guilty plea or counsel's unprofessional errors at trial, the outcome of the proceeding would have been different. *See Coon*, 2002 S.D. 48, ¶ 13, 644 N.W.2d at 643; *see also Jenner*, 1999 S.D. 20, ¶ 16, 590 N.W.2d at 470-71.

### a. Trial Counsels' Advice about Then-Existing South Dakota Law

[¶52.]     Whether stated as a free-standing claim or an ineffective assistance of counsel claim, Piper's argument that incorrect legal advice rendered his guilty pleas involuntary and unintelligent is not sustainable. Our analysis of this issue above effectively resolves Piper's argument that his trial counsel were ineffective because they advised him that the guilt and sentencing forums had to be the same.

[¶53.]     The record here allows but one conclusion concerning counsels' advice—it was reasonable based upon the then-existing state of the law. The only evidence regarding the standard of care came in the form of testimony from one of Piper's first habeas attorneys, who stated that the issue was unsettled at the time Piper pled guilty and was clarified only with our decision in *Piper I*. In his opinion, Piper's trial counsel provided reasonable advice based upon a plausible reading of SDCL 23A-27A-2 and SDCL 23A-27A-6. Although we are free, as law-trained judges, to "substitute [our] own judgment as to whether counsel's representation was ineffective[,]" we decline to do so here. *Davi v. Class*, 2000 S.D. 30, ¶ 15, 609 N.W.2d 107, 112. Piper's trial counsel were experienced criminal defense attorneys,

and though their opinion regarding guilty plea and sentencing procedure proved to be incorrect, the advice was reasonable at the time of Piper's plea.

[¶54.]     Nor has Piper established any prejudice from counsels' advice. Piper has not alleged, much less established, that he would not have pled guilty but for his counsels' advice or, further, that the result at a trial would have been different. Indeed, Piper has not argued he had any reasonable chance of avoiding a conviction.

### b. Presenting Expert Testimony

[¶55.]     Piper argues that his resentencing attorneys were ineffective because the experts they called acknowledged the presence of certain aggravating circumstances on cross-examination. Piper's trial counsel elicited expert testimony regarding mitigating factors from neuropsychologist Dr. Dewey Ertz and psychologist Dr. Hal Wortzel. Dr. Wortzel testified that Piper was immature and impulsive given his young age (Piper was 19 when he participated in Poage's killing), and Dr. Ertz testified that Piper displayed behaviors consistent with heavy marijuana and LSD use in addition to displaying ADHD symptomatology. However, these experts also agreed that Piper stole Poage's property and committed the murder, which involved torture, in order to eliminate Poage as a witness. *See* SDCL 23A-27A-1 (listing aggravating circumstances in capital cases).

[¶56.]     Under the *Strickland* analysis, we cannot say counsels' decision to call these two experts was deficient. They provided valuable insight into Piper's behaviors and assisted with Piper's effort to present his mitigation case. The fact that they candidly acknowledged the presence of aggravating factors was no more damaging to Piper's case than his own admissions to the same aggravating factors.

Even if the decision to call the experts was deficient, we are unable to conclude that the tactical decision impacted the outcome of the resentencing. Piper is, therefore, unable to demonstrate ineffective assistance of counsel.

### c. Voir Dire

[¶57.]       Piper also claims that his resentencing counsel committed errors during voir dire that deprived him of his right to a fair trial and that his appellate counsels' failure to appeal this issue constitutes ineffective assistance. Neither theory is sustainable for a variety of reasons.

[¶58.]       First, any free-standing fair trial or due process claim associated with the jury selection process has been procedurally defaulted because it was not advanced on direct appeal from the jury resentencing in *Piper III*. It is therefore precluded under the res judicata principles discussed above.

[¶59.]       Second, the jury selection claim does not become more persuasive when it is viewed through the lens of the *Strickland* analysis. As to the first prong of *Strickland*, Piper has not demonstrated his attorneys' efforts fell below a standard of reasonableness. Indeed, Piper's counsel challenged the two potential jurors he identifies—Sagdalen and Carlin—for cause, citing concerns about what he describes as an inclination to impose the death penalty. When the court denied the cause challenges, Piper's attorneys exercised peremptory strikes to ensure that the two jurors did not become part of the jury that considered Piper's sentence.[17]

[¶60.]       Beyond this, Piper cannot show prejudice under the second prong of *Strickland* even if we consider the jury selection issue on its merits as a free-

_____

17.    The resentencing court allowed 21 peremptory challenges for each side.

standing, non-defaulted claim. The Sixth and Fourteenth Amendments guarantee a defendant a fair and impartial jury, but not a fair and impartial venire. Practical rules for selecting jurors through voir dire and a system of cause and peremptory challenges are essential to vindicate the right to a fair, impartial jury, but these rules are not, themselves, constitutional in nature. *See Miller*, 2018 S.D. 33, ¶ 23, 911 N.W.2d at 651 ("'[A] principal reason for peremptories' is to 'help secure the constitutional guarantee of a trial by an impartial jury.'") (quoting *Rivera v. Illinois*, 556 U.S. 148, 159, 129 S. Ct. 1446, 1454, 173 L. Ed. 2d 320 (2009)). The central point of analysis focuses upon the jury that heard the case—not those prospective jurors who may have been included in the venire.

[¶61.]     This is true even when defense counsel felt compelled to use peremptory challenges in order to assure the fairness and impartiality of those ultimately selected to serve on the jury. In *Ross v. Oklahoma*, the United States Supreme Court recognized as much:

> Petitioner was undoubtedly required to exercise a peremptory challenge to cure the trial court's error. But we reject the notion that the loss of a peremptory challenge constitutes a violation of the constitutional right to an impartial jury. We have long recognized that peremptory challenges are not of constitutional dimension. They are a means to achieve the end of an impartial jury. So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated.

487 U.S. 81, 88, 108 S. Ct. 2273, 2278, 101 L. Ed. 2d 80 (1988) (citations omitted).

[¶62.]     Even if prospective jurors Sagdalen and Carlin should have been removed from the venire for cause, Piper's right to a fair and impartial jury was not implicated because they did not sit on his jury. *See State v. Verhoef*, 2001 S.D. 58,

¶ 19, 627 N.W.2d 437, 442 ("[Defendant] has failed to show that the twelve jurors who heard the evidence and convicted him based upon that evidence were not impartial."). Therefore, Piper is unable to sustain his post-conviction jury selection argument concerning Sagdalen and Carlin either on its merits or as a component of an ineffective assistance of counsel claim.

[¶63.] Piper's claim that potential juror Monteforte was incorrectly removed for cause because he expressed difficulty imposing a death sentence is a claim of circuit court error that should have been litigated on direct appeal in *Piper III*. Because it was not, it is now precluded in this habeas action. The claim is not meritorious, in any event, either as a separate claim or an ineffective assistance claim.

[¶64.] "[T]he proper standard for determining when a prospective juror may be excused for cause because of his or her views on capital punishment . . . is whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S. Ct. 844, 852, 83 L. Ed. 2d 841 (1985) (quoting *Adams v. Texas*, 448 U.S. 38, 45, 100 S. Ct. 2521, 2526, 65 L. Ed. 2d 581 (1980)). As long as jurors "can conscientiously and properly carry out their sworn duty to apply the law to the facts of the particular case[,]" excluding individuals who would not impose the death penalty does not violate the Sixth Amendment cross-section clause or the impartial jury right.[18] *Lockhart v. McCree*, 476 U.S. 162, 184, 106 S. Ct.

---

18. This process is sometimes known as "death qualifying" a jury in a capital case. *See State v. McDowell*, 391 N.W.2d 661, 664-65 (S.D. 1986).

1758, 1770, 90 L. Ed. 2d 137 (1986); *see also State v. McDowell*, 391 N.W.2d 661, 664-65 (S.D. 1986).

[¶65.]     Nevertheless, Piper argues that his counsel failed to object to Monteforte's removal, and his appellate counsel was ineffective when it chose to not appeal the issue.  Again, however, Piper does not discuss the ultimate makeup of the jury that actually heard the case, other than to express that Monteforte's removal "tilted" the jury toward the death penalty.  This argument does not meet the heavy burden of proving ineffective assistance of counsel under either prong of *Strickland*, or even on its merits.  Moreover, testimony during voir dire reveals that Monteforte's "views [would] 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'"  *State v. Rhines*, 1996 S.D. 55, ¶ 44, 548 N.W.2d 415, 431 (quoting *Wainwright*, 469 U.S. at 424, 105 S. Ct. at 852).[19]

### d.  Trial Preparation Concerning Correctional Officers' Testimony

[¶66.]     Piper further claims that his resentencing counsel was ineffective in their investigation of the State's witnesses before trial, including several correctional officers whose addresses were listed by the State as simply, the "Penitentiary."  Piper's counsel testified at the habeas hearing that they had difficulty contacting the State's witnesses, and they did not travel to meet with the

---

19.     Because each of Piper's jury selection arguments lack merit, his claim that his appellate counsel was deficient for not advancing them on direct appeal is similarly unsupported.  Counsel testified that he did not pursue the arguments because of their relative weakness.  *See, e.g., Jones v. Barnes*, 463 U.S. 745, 751-52, 103 S. Ct. 3308, 3313, 77 L. Ed. 2d 987 (1983) (discussing the importance of a trained advocate determining best issues to appeal).

witnesses in person before trial. However, his attorneys were able to contact the witnesses by email and telephone to conduct interviews. Piper claims his attorneys were unprepared for these witnesses because they "changed their tone" during the resentencing hearing when they were previously "laudatory" of Piper during their telephone interview.

[¶67.]    We have held that "[a]n attorney must make a reasonable investigation and must make reasonable decisions to forego particular investigations. A difference in trial tactics does not amount to ineffective assistance of counsel." *Brakeall v. Weber*, 2003 S.D. 90, ¶ 16, 668 N.W.2d 79, 85 (quoting *Randall*, 2002 S.D. 149, ¶ 7, 655 N.W.2d at 96). Here, we are unable to conclude that counsel was deficient in their preparation. Furthermore, we cannot find the existence of prejudice. There is no indication that the witnesses' testimony, even if it was unexpectedly unflattering for Piper, would have changed had counsel interviewed the officers in person. Given the general nature of the description of the testimony, Piper has also not established that the jury's result was impacted by the testimony.

### e. Trial Preparation Concerning the State's Expert Witnesses

[¶68.]    In a separate claim of deficient representation, Piper alleges that his resentencing counsel acquiesced to expert testimony offered by the State through psychologist Dr. Ronald Franks despite not interviewing him before trial or having his curriculum vitae. However, the State had previously only identified Dr. Franks as a rebuttal witness. When the State decided to call him in its case-in-chief

instead, the resentencing court ordered a recess, and Piper's attorneys interviewed Dr. Franks before his testimony.

[¶69.]    The decision to forego a pretrial interview of a rebuttal expert witness may be reasonable since the scope of the rebuttal will be limited by the testimony of witnesses who have not yet testified. However, even if it were deficient, Piper has not alleged specific prejudice, and we are unable to discern any from the record.

[¶70.]    Piper is also critical of his attorneys' efforts concerning another State expert, Dr. Ulises Pesce, who is a psychiatrist. The State disclosed Dr. Pesce as an expert after the court's deadline, and Piper's attorneys moved to exclude his testimony. Their efforts were reasonable under the circumstances, but the resentencing court denied their motion to exclude and allowed testimony from Dr. Pesce. From our review, this is less an ineffective assistance of counsel argument and more a claim that the court abused its discretion by allowing the testimony. The claim should have been made on direct appeal, and Piper's failure to do so renders it defaulted and precluded in this habeas action.[20]

### f. Trial Preparation Concerning State Witness Tom Curtis

[¶71.]    In a separate claim alleging insufficient preparation, Piper argues his attorneys failed to investigate the reasons why State witness Tom Curtis was being held by Utah authorities. Curtis' involvement in Piper's case dates back to 2000

---

20.    Other than stating that Dr. Pesce provided testimony "about Piper's mental condition and antisocial personality disorder[,]" Piper does not allege that he was prejudiced by his attorneys' conduct. *See Steiner v. Weber*, 2011 S.D. 40, ¶ 6, 815 N.W.2d 549, 551-52 (*Strickland* requires a showing that "counsel's deficient performance" changed the outcome.). Piper has also not alleged that the result at trial would have been different in the absence of Dr. Pesce's testimony.

when he was housed with Piper, Hoadley, and Page in the Lawrence County Jail. Curtis testified at Piper's 2001 sentencing hearing that Piper had conceived a plan to kill prison guards in an attempt to break out of jail. The State called Curtis again at Piper's 2011 resentencing, and he provided the same testimony.

[¶72.] At the time of the 2011 hearing, Curtis was incarcerated in Utah, waiting to be sentenced on felony charges. Piper claims that his counsels' failure to investigate Curtis' current status means that they were unable to impeach him. [21] However, Piper's claim that his counsel failed to investigate Curtis' pending charges lacks a predicate showing that the investigation would have yielded meaningful impeachment information. Without it, Piper cannot show how counsels' failure prejudiced the outcome of his resentencing.[22] *See Fast Horse v. Weber*, 2013 S.D. 74, ¶ 19, 838 N.W.2d 831, 837-38 (concluding that counsel's decision to not interview a witness did not change the outcome of the trial).

### g. Trial Preparation Concerning Sister Crowley

[¶73.] Piper's resentencing counsel called Sister Gabrielle Crowley, a Catholic nun, as a mitigation witness to testify about Piper's spiritual growth after she

---

21. Piper also now alleges that the State's failure to provide Curtis' criminal history report is, itself, a free-standing due process claim that is cognizable in this habeas case despite the fact it was not raised on direct review. We disagree, but even if the claim were not precluded, we are not convinced on this record that Piper could sustain his burden to demonstrate the omitted information was material. *See Giglio v. United States*, 405 U.S. 150, 154, 92 S. Ct. 763, 766, 31 L. Ed. 2d 104 (1972) ("A finding of materiality of the evidence is required under *Brady* [*v. Maryland*].").

22. Piper further argues that the State violated his due process rights when it failed to provide his resentencing counsel with Curtis' updated criminal history. Because Piper did not raise this issue on appeal in *Piper III*, he is foreclosed from bringing this claim now as a free-standing claim.

befriended him at the penitentiary. On cross-examination, the State inquired if Sister Crowley had written a letter to a female inmate at Piper's urging in violation of prison policy. Piper now alleges that there is insufficient evidence to support the claim that the letter violated prison policy, and he claims his attorneys were ineffective because they did not investigate whether prison policy was implicated and allowed the cross-examination to continue without objecting.

[¶74.] At the second habeas hearing, one of Piper's attorneys testified that, in hindsight, he would handle Sister Crowley's cross-examination differently. We do not, however, utilize the benefit of hindsight in our analysis of ineffective assistance of counsel claim, which is instead "evaluated from counsel's perspective at the time of the alleged error . . . ." *State v. Thomas*, 2011 S.D. 15, ¶ 21, 796 N.W.2d 706, 713 (quoting *Steichen v. Weber*, 2009 S.D. 4, ¶ 25, 760 N.W.2d 381, 393). Whether the letter actually violated policy is still unsettled, despite the fact that Sister Crowley acknowledged she had violated the policy. Under the circumstances, Piper has failed to prove his counsel acted unreasonably. Further, Piper fails to show how the alleged error prejudiced the outcome of his resentencing.[23]

**h. Appellate Counsels' Decision Not to Appeal Denial of Mistrial**

[¶75.] Last, Piper claims ineffective assistance of counsel because his resentencing counsel failed to appeal the denial of a mistrial motion when the State violated a motion in limine by asking a witness about Piper's prison privileges.

---

23. Like the Tom Curtis claim, Piper argues a due process violation occurred when the prosecution allegedly misled the jury about whether Sister Crowley violated prison policy. Because Piper did not raise this issue on appeal in *Piper III*, he is foreclosed from bringing it now as a free-standing claim.

Although Piper's counsel objected and moved for a mistrial, the resentencing court denied Piper's motion. At the second habeas hearing, Piper's appellate counsel testified that he made a strategic decision not to appeal the issue based upon his assessment of its relative strength. *See Rhines v. Weber,* 2000 S.D. 19, ¶ 14, 608 N.W.2d 303, 307 (discussing highly deferential review of counsel's conduct). We conclude this assessment was reasonable. Further, Piper does not articulate how his counsels' failure to raise this issue on appeal prejudiced him, and therefore does not satisfy the second prong of the *Strickland* test.

### Conclusion

[¶76.] Piper cannot challenge his guilty plea or alleged inconsistent arguments on the merits under the procedural framework of a habeas action. Further, Piper has not met his burden to show deficient performance and prejudice under *Strickland* on his ineffective assistance of counsel claims. We affirm on all issues.

[¶77.] GILBERTSON, Chief Justice, and KERN and JENSEN, Justices, concur.